## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:21-CV-22778-RAR/DAMIAN

ODETTE BLANCO DE FERNANDEZ
*née* BLANCO ROSELL, et al.,

     Plaintiffs,

     v.

CMA CGM S.A. (a/k/a CMA CGM THE FRENCH
LINE; a/k/a CMA CGM GROUP) and CMA CGM
(AMERICA) LLC,

     Defendants.

_____/

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST
### FOR INTERNATIONAL ASSISTANCE AND APPOINTMENT
### OF A COMMISSIONER AND MEMORANDUM IN SUPPORT

Plaintiffs, by undersigned counsel, oppose Defendant CMA CGM (AMERICA) LLC

("CMA CGM America") and Defendant CMA CGM S.A. ("S.A.")'s request for international

assistance and appointment of a Commissioner (the "Motion").

### PRELIMINARY STATEMENT

Defendants request that the Court extend international comity to the French Blocking

Statute, but the Court already denied that same request in a 27-page opinion (Dkt. 54).  So,

Defendants' Motion is a request for reconsideration of that ruling.  Whether the Motion is a request

for reconsideration or to extend international comity to a foreign statute, the Motion is ***not*** a

discovery dispute subject to this Court's shortened and expedited discovery dispute briefing

procedure.  Defendants submitted twenty-two pages of legal arguments by their attorneys—

seventeen of which appear in declarations by their trial counsel and by the counsel they propose

to hire as a Commissioner.  Defendants also attached over 250 pages of exhibits, which include

many documents beyond the two sets of Plaintiffs' discovery requests at issue.  This is well in excess of the limits this Court has established for routine discovery issues.  Plaintiffs have endeavored to respond efficiently to these voluminous arguments.  But Defendants should not be permitted to circumvent regular motions practice by confining their Motion to five pages, ostensibly to comply with the Court's expedited discovery procedure, and then attach hundreds of pages of additional argument and evidence.

## <u>INTRODUCTION</u>

Defendants seek relief on the same basis they sought in their Motion to Stay (Dkt. 32), which the Court denied (Dkt. 54).  They again ask the Court to extend international comity to the French Blocking Statute.  But from the United States Supreme Court in 1987 to this Court ***in this case*** just a few months ago, courts have refused to extend comity to this same French Blocking Statute.  This Court ***denied*** Defendants' previous request to extend comity to the French Blocking Statute, recognizing that the statute was "intended to provide [French nationals] with tactical weapons and bargaining chips in foreign courts.'" *De Fernandez v. CMA CGM S.A.*, No. 21-CV-22778, 2022 WL 2713737, at *6 (S.D. Fla. July 12, 2022) (citations omitted).  By asking the Court yet again to enforce the same French Blocking Statute, Defendants are not presenting a discovery dispute to the Court but are instead asking this Court to reverse its prior ruling.

The Court should not reverse its prior decision refusing to extend comity to the French Blocking Statute.  Defendants again fail to meet their burden to show the considerations for extending comity weigh in their favor.  Each factor weighs heavily against them and the Court should deny the Motion.  Moreover, CMA CGM America is not even a proper movant, as it is a U.S. corporation not subject to the French Blocking Statute.

Moreover, S.A.'s claimed fear of prosecution if it violates the French Blocking Statute does not appear genuine.  S.A. has participated as both plaintiff and defendant in *dozens* of cases in the United States as recently as a few months ago, fully complying with its discovery obligations in violation of the French Blocking Statute and producing many of the same types of documents Plaintiffs request here, without ever objecting on that basis.  S.A. cannot enjoy the benefits of our judicial system when it favors them and object to that system when it does not.

## RELEVANT PROCEDURAL HISTORY

This is not the first (nor second nor third) time Defendants have frustrated the progress of this case.  Plaintiffs first documented "Defendants' disregard for the Court's practice and procedure" over a year ago in their Motion to Compel Compliance with Court Order.  Dkt. 42 at 3.  Plaintiffs outlined how Defendants represented in a court filing that S.A. would waive service of process (Dkt. 31 at 2 n.3), but then S.A. privately refused to do so, "compelling Plaintiffs to complete service through the Hague Convention."  Dkt. 42 at 3.  On a different occasion, Defendants certified to the Court that a meet and confer had taken place and that Plaintiffs' counsel expressed their position on a court filing – except no meet and confer occurred and Plaintiffs' counsel never expressed their position.  *Id*. at 3-4.  Later, Defendants defied a scheduling order, refused to participate in the court-ordered, mandatory scheduling conference and caused the parties unnecessary time and expense briefing Plaintiffs' Motion to Compel Compliance with Court Order.  *Id*. at 4-6.

Now, Defendants *again* refuse to recognize the authority of this Court's orders.  CMA CGM America previously moved to stay this case "in the interest of international comity" to allow S.A. to "comply with the French Blocking Statute."  Dkt. 32 at 13. CMA CGM America explained that "[t]he French Blocking Statute also imposes an obligation on [S.A.] to follow the necessary

processes under the Hague Convention on Evidence before submitting any documentation or information to a foreign court." *Id*. at 8.  Plaintiffs opposed the request, extensively briefing why the Court should not extend international comity to the French Blocking Statute.  Dkt. 36 at 7-11. The Court held a hearing on the matter.  Dkt. 52.  And the Court ruled on it.  Dkt. 54.  The Court entered a well-reasoned, 27-page Order carefully analyzing whether to grant international comity and recognize the French Blocking Statute, ultimately siding with the Plaintiffs, the United States Supreme Court, and the dozens of cases refusing to do so.  *Id*.

Undeterred, and without even mentioning the prior ruling until the last page of their memo and then only in passing by a reference to their Motion to Stay, Defendants now ask the Court to undergo yet again a "comity analysis" and recognize the same French Blocking Statute that the Court already concluded it would not recognize.  Motion at 4-5.  At most, Defendants claim the French government "recently strengthened" the French Blocking Statute, claiming that "France recently amended its evidence law" on February 18, 2022.  Motion at 2, 5.  But that is not true. France has not amended the French Blocking Statute.  As Defendants' exhibits show, on February 18, 2022, the French Ministry of Economy and Financial Affairs adopted a decree "enhancing the scope of [the French agency] SISSE, which will now require requests for production to be forwarded without delay to SISSE."  Dkt. 99-1 (Lenoir Decl.) at 28 of 241.[1]  SISSE is not the French Parliament.  The French Parliament enacts and amends laws, as it did when it enacted the French Blocking Statute in 1968 and enacted the only amendment to it in 1980.  *Id*. at 79-80 of 241.

---

[1] One of Defendants' exhibits is a 241-page composite exhibit, containing multiple exhibits that are filings from other federal court cases, which blurs the ECF heading and page number. Defendants then generally cite to exhibits within that composite exhibit, which are impossible to locate without turning page-by-page through the 241 pages.  For that reason, Plaintiffs will cite to the page number of the overall PDF.

Even if the decree were an amendment to the French Blocking Statute, Defendants claim

only that this amendment now requires S.A. to notify SISSE "when sensitive information may be

called for from foreign authorities."  Motion at 2.  But Defendants do not argue that Plaintiffs are

a foreign authority nor do they argue that Plaintiffs requested "sensitive information." Regardless,

that decree pre-dates the Court's hearing and ruling on comity.  Defendants also cite a letter from

SISSE dated nine days after the Court's comity ruling "reminding the company" that the French

Blocking Statute exists.  *Id*. at 2.  After Plaintiffs served their discovery requests, S.A. apparently

received two more letters from SISSE again reminding S.A. that the French Blocking Statute

exists.  *Id*.  These are not some new developments warranting the Court's reconsideration of its

comity ruling.  Rather, these are precisely the "tactical weapons and bargaining chips" that this

Court already recognized the French government provides its nationals to use in U.S. courts.  *CMA*

*CGM S.A.*, 2022 WL 2713737, at *6.  The Court's reasoning is as valid today as it was just a few

months ago:

> [I]t is clear from the text of these provisions that French law does provide some
> legal punishment that may be imposed for violations of its Blocking Statutes by
> participating in discovery in United States courts . . . .
>
> However, as discussed below, United States courts have consistently determined
> that the French Blocking Statute was never expected nor intended to be enforced
> against French subjects but was instead "intended to provide them with tactical
> weapons and bargaining chips in foreign courts." *Compagnie Francaise*
> *D'Assurance v. Phillips Petroleum Co*., 105 F.R.D. 16, 30 (S.D.N.Y.
> 1984); *Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat*., 902 F.2d
> 1275, 1280 (7th Cir. 1990). United States courts have also consistently found that
> the chances of prosecution of a French national for violation of the French Blocking
> Statute are "minimal" and do not present a "real risk." *See, e.g., Bodner v. Paribas*,
> 202 F.R.D. 370, 375 (S.D.N.Y. 2000); *Compagnie Francaise*, 105 F.R.D. at 30.

*Id*. at *5-6.  This Court continued:

> Defendants offer no evidence of any French national (or anyone for that matter)
> being prosecuted or penalized for violation of the French or EU Blocking Statute,
> and Plaintiffs point out that, to the contrary, French nationals who are defendants

in other Helms-Burton Act cases have participated in litigation without authorization and without punishment. Likewise, this Court is not convinced that Defendants here face any real risk of prosecution for violation of the Blocking Statutes and, therefore, discounts the hardship posed by the prospect of sanctions.

*Id*. at *12.[2]

Defendants' speculation that SISSE's letters reflect some new intent by the French government to enforce the French Blocking Statute is disingenuous.  There are hundreds if not thousands of open cases involving French companies complying with discovery obligations in U.S. courts every day in violation of the French Blocking Statute and ***not one*** has ever been prosecuted.[3]  As shown below, S.A. is a repeat offender, violating the French Blocking Statute dozens of times in other cases but choosing to invoke it here.

## THE HAGUE CONVENTION DISCOVERY PROCESS

Although Defendants' motion is long on speculation of supposed prosecution, it is short on the details of what they are requesting.  In fact, Defendants do not actually explain the process for seeking discovery through Article 17 of the Hague Convention, instead vaguely referring to it as "U.S.-style discovery" (Motion at 3) and inviting the Court to sift through over 250 pages of exhibits to attempt to learn how the process works.  Stated simply, it is ***not*** U.S.-style discovery. Application of the Hague Convention places the discovery process in this case before the whims of the French Ministry of Justice.  Only a single French court has ever decided what U.S. discovery is deemed acceptable to the French Ministry of Justice.  Dkt. 99-2 (Blumrosen Decl.) at ¶ 26 (*citing*

---

[2] Although Defendants still do not cite to any French national being prosecuted under the French Blocking Statute in their motion, a declaration buried in one of their exhibits identifies the sole prosecution ever brought under that law, relating to unethical conduct by a French attorney who misled a witness to entice the witness to testify in the U.S., a case multiple courts have distinguished on that basis.  *See infra* Section II.E.

[3] For example, PACER Case Locator shows 221 currently open federal cases where BNP Paribas is a party, 124 currently open federal cases for Société Générale, and 60 open federal cases for Credit Agricole.  *See* Exhibit B.

Paris Court of Appeals, September 18, 2003, 2002/18509).  In that case from 2003, the Paris Court of Appeals ruled "for the first time" that U.S. discovery requests must be "enumerated limitatively."  *Id*.  Defendants do not explain what that means.  "Limitatively" is not a word recognized in the English language.  Nevertheless, Defendants request that the Court subject the well-developed U.S. jurisprudence, rules, and procedures on discovery to the standard of whatever the French Ministry of Justice determines is "enumerated limitatively."

Mr. Blumrosen – Defendants' proposed Commissioner for this process – confirmed this amorphous standard in his call with Plaintiffs' counsel.  For over an hour, Plaintiffs' counsel questioned and pressed Mr. Blumrosen for details on how discovery works in France.  Baron Decl. at ¶ 5, attached as Exhibit A hereto.  Mr. Blumrosen explained that his role as Commissioner is to transmit papers to and from the French Ministry of Justice – nothing more, nothing less.  *Id*. at ¶ 6.  As confirmed by one of Defendants' many exhibits, a commissioner "has no enforcement powers."  Dkt. 99-1 (Lenoir Decl.) at 30 of 241.  Mr. Blumrosen corroborated that he has no "adjudicatory power or function and cannot rule or otherwise decide on any objection or any substantive or procedural matter."  Dkt. 99-2 (Blumrosen Decl.) at ¶ 20.  Instead, the French Ministry of Justice reviews each and every discovery request to determine whether each is "enumerated limitatively" and there are no rules that govern the Article 17 process.  Baron Decl. ¶¶ 7-8.  When the French Ministry of Justice objects, Plaintiffs need to revise their discovery requests and re-submit them to the Ministry.  *Id*. at ¶ 9; *see also* Dkt. 99-2 (Blumrosen Decl.) at ¶ 27.  If the Ministry objects again, Plaintiffs must revise and re-submit.  *Id*.  What happens if the French Ministry refuses to approve an otherwise acceptable discovery request?  Mr. Blumrosen could not answer that critical and threshold question.  *Id*. at ¶ 10.  Crucially, as explained below, the French government has already publicly stated it will do everything in its power to prevent

Helms-Burton Act cases from proceeding against French nationals (*see infra* p. 9), and so Plaintiffs are justifiably concerned the French Ministry of Justice will find Plaintiff's discovery requests not to be "enumerated limitatively."

Moreover, the French Blocking Statute is a one-way street, requiring Plaintiffs to seek discovery through the Hague Convention, not Defendants. Defendants would not have the French Ministry involved in their discovery at all. Defendants would have the benefit of traditional U.S. discovery in this case, whereas Plaintiffs would have to submit, and re-submit, and re-submit every discovery request to the French Ministry of Justice for review and approval. In other words, this Court would remain the arbiter for the Defendants' discovery but is replaced by the French Ministry for the Plaintiffs' discovery. The United States Supreme Court recognized this incongruity, stating that this same French Blocking Statute "represent[s] an extraordinary exercise of legislative jurisdiction by the Republic of France over a United States district judge." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987) ("*Aerospatiale*"). It is no surprise, therefore, that, almost without exception,[4] every single court presented with an opposed motion to recognize the French Blocking Statute has rejected it, including this Court in this case just a few months ago. *CMA CGM S.A.*, 2022 WL 2713737, at *10; *see also, e.g., United States v. Buff*, No. 19CV5549GBDJW, 2022 WL 11899597, at *6 (S.D.N.Y. Oct. 20, 2022) (denying application of the French Blocking Statute); *Arthur Schuman Inc. v. Entremont All. SAS*, No. CV2016638SDWLDW, 2022 WL 4466623, at *4 (D.N.J. Sept. 26, 2022) (same); *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16 C 3401,

---

[4] Indeed, Defendants can only point to two cases that ever found the factors to consider for recognizing the French Blocking Statute weighed in favor of recognition. *Behrens v. Arconic*, No. CV 19-2664, 2020 WL 1250956 (E.D. Pa. Mar. 13, 2020); *Salt River Project Agric. Improvement & Power Dist. v. Trench France SAS*, 303 F. Supp. 3d 1004, 1008 (D. Ariz. 2018). As shown below (*infra* Section II), those factors weigh heavily against recognition in this case.

2017 WL 4287205, at \*4 (N.D. Ill. Sept. 27, 2017) (same); *Metso Minerals Indus., Inc. v. Johnson Crushers Int'l, Inc.*, 276 F.R.D. 504, 505-06 (E.D. Wis. 2011) (same); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 278 F.R.D. 51, 52 (E.D.N.Y. 2010) (same); *In re Global Power Equip. Grp., Inc.*, 418 B.R. 833, 851 (Bankr. D. Del. 2009) (same); *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 450-56 (E.D.N.Y. 2008) (same); *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02CIV5571RJHHBP, 2006 WL 3378115, at \*3-4 (S.D.N.Y. Nov. 16, 2006) (same); *Bodner v. Paribas*, 202 F.R.D. 370, 376-77 (E.D.N.Y. 2000) (same).

## THE FRENCH GOVERNMENT LIKELY
## WILL NOT APPROVE PLAINTIFFS' DISCOVERY

"France condemns the activation of Title III of the Helms-Burton Act."[5]  The Helms-Burton Act "is an attack on our economic sovereignty."[6]  "France and its European partners are ***determined to use the instruments at their disposal*** to protect the economic activities and legitimate investments of their nationals and companies in Cuba."[7]  Given these public statements by the French government, Plaintiffs believe that the French government will not approve discovery requests in this case based solely on its opposition to the Helms-Burton Act regardless of how "limitatively" Plaintiffs' discovery requests may be "enumerated."  Plaintiffs anticipate that, if the Court grants Defendants' request to have the French Ministry of Justice supervise discovery in this case, that ministry will "use the instruments at their disposal" to obstruct this case and prevent it from proceeding.  Even the Eleventh Circuit recently recognized that the EU is attempting to obstruct all Helms-Burton Act cases in the United States and that district courts need

---

[5] December 19, 2019 Statement of the French Ministry of Foreign Affairs (available at https://www.diplomatie.gouv.fr/en/country-files/cuba/news/article/cuba-united-states-application-of-title-ii-of-the-helms-burton-act-reply-by-the).
[6] *Id.*
[7] May 2, 2019 Statement of the French Ministry of Foreign Affairs (available at https://www.diplomatie.gouv.fr/en/country-files/cuba/news/article/cuba-extraterritorial-u-s-sanctions-02-05-19) (emphasis added).

not recognize an EU Blocking Statute designed to obstruct U.S. litigation.  *See Marti v. Iberostar Hoteles y Apartamentos S.L.*, 54 F.4th 641, 644 (11th Cir. 2022) (reversing a stay as immoderate and acknowledging "[n]o one contests that the EU [Blocking Statute] seeks to obstruct suits like Marti's [Helms-Burton Act case].").  This Court ruled similarly, calling the EU Blocking Statute "the opposite of international comity."  *CMA CGM S.A.*, 2022 WL 2713737, at *10.

## ARGUMENT

The Court should – again – deny Defendants request to extend comity to the French Blocking Statute.  First, the Court should judge Defendants' Motion for what it is, not what it is titled.  Defendants improperly seek reconsideration of the Court's prior decision refusing to extend international comity to the French Blocking Statute.  Second, none of the five factors for extending comity to the French Blocking Statute weigh in favor of comity.  Third, S.A. has been both a plaintiff and a defendant in dozens of U.S. litigations where it engages in discovery in violation of the French Blocking Statute without objection.  The Court should not put much weight on S.A.'s claimed fear of prosecution here.  The Court was correct the first time it refused to recognize the French law.

## I.     Defendants' Motion Inappropriately Seeks Reconsideration

Defendants' motion is a disguised motion for reconsideration.  *See, e.g., Hyundai Motor Am. Corp. v. EFN W. Palm Motor Sales, LLC*, No. 20-CV-82102, 2022 WL 16950478, at *3 (S.D. Fla. Nov. 15, 2022) (deeming a motion in limine to be a "belated motion for reconsideration in disguise"); *Travelers Indem. Co. v. Figg Bridge Engineers, Inc.*, No. 18-22585-CIV, 2019 WL 422663, at *1 (S.D. Fla. Jan. 25, 2019) (deeming a "renewed motion" to be a "disguised motion for reconsideration"); *Reyes v. Collins & 74th, Inc.*, No. 16-24362-CIV, 2017 WL 7796322, at *1 (S.D. Fla. July 19, 2017) ("[T]he motion for clarification is actually a disguised motion for

reconsideration."). As shown above, Defendants seek the same relief this Court already denied – recognition of the French Blocking Statute under principles of international comity. It makes no difference that the previous request was for a stay based on the French Blocking Statute and the current one is purportedly for "international assistance" based on the French Blocking Statute. Both requests ask for the same relief – the extension of international comity to the French Blocking Statute. The current request requires the Court to balance the interests it already considered; namely, France's interest as "a sovereign in controlling access to information within its borders and protecting its citizens from discovery in foreign litigation." *CMA CGM S.A.*, 2022 WL 2713737, at \*10. Indeed, both motions rely on the same exact *Aerospatiale* Supreme Court case that this Court already interpreted and applied against granting international comity. *See* Dkt. 32 at 13 (citing *Aerospatiale*); Motion at 4 (same). Where a motion "seek[s] the same relief on the same basis . . . [it] is due to be summarily denied, regardless of whether it is construed as a motion for reconsideration or a successive motion." *Samuel v. Granite Servs. Int'l, Inc.*, No. 8:15-CV-2072-T-33TGW, 2016 WL 11493321, at \*1 (M.D. Fla. Aug. 9, 2016) (*citing Anderson v. Fla. Dep't of Envtl. Prot.*, 567 Fed. Appx. 679, 680 (11th Cir. 2014)).

There are only two grounds to seek reconsideration of the same relief already denied, and Defendants do not argue either: "newly-discovered evidence or manifest errors of law or fact." *Smith v. Ocwen Fin.*, 488 F. App'x 426, 428 (11th Cir. 2012). At most, Defendants argue that the "balance" of the comity analysis is different now than it was on the Motion to Stay, but only because "France recently amended its evidence law and updated its enforcement regime." Motion at 5. This argument fails for at least four reasons.

***First***, as shown above (*supra* p. 4), France did not amend the French Blocking Statute. The French Parliament enacted the French Blocking Statute in 1968 and amended it once, in 1980.

Dkt. 99-1 at 79-80 of 241.  This is the same French Blocking Statute that the U.S. Supreme Court refused to recognize in 1987, as did this Court in this case just a few months ago.  *Aerospatiale*, 482 U.S. at 544 n.29; *CMA CGM S.A.*, 2022 WL 2713737, at *12.

*Second*, the purported amendment is a decree that Defendants claim relates to SISSE's involvement "when sensitive information may be called for from foreign authorities."  *Id*. at 2. Plaintiffs are not a foreign authority and they are not calling for any sensitive information. Defendants do not argue otherwise.  Therefore, SISSE's involvement is not even triggered under the decree.  So, the decree is irrelevant.

*Third*, even if the amendment was relevant, it does not change the comity analysis because Defendants still do not identify any actual prosecution.  *See Republic Techs. (NA), LLC*, 2017 WL 4287205, at *4 (refusing to recognize the French Blocking Statute where there was "no evidence that France's interest in its blocking statute has changed or that France has become more vigorous in enforcing its blocking statute in recent years").  It has been over a year since that amendment and there have been zero prosecutions under the French Blocking Statute, despite French nationals, including S.A., actively litigating cases throughout the United States.  This Court already cited and considered the same risks Defendants cite in their Motion (six months imprisonment and an 18,000 euro fine) and concluded "this Court is not convinced that Defendants here face any real risk of prosecution."  *CMA CGM S.A.*, 2022 WL 2713737, at *12.

*Fourth*, even if the amendment changed the comity analysis (it does not), that amendment pre-dates the Court's hearing on and order denying the motion to stay.  *Id*.  If the amendment truly changed the comity analysis, Defendants had months to present it to the Court as supplemental authority before the Court ruled on their prior comity motion.  They did not and cannot do so now in a disguised motion for reconsideration.  "[R]econsideration is not an appropriate vehicle to

present authorities available at the time of the first decision or to reiterate arguments previously made." *Burger King Corp. v. Hinton, Inc.*, No. 01-2249-CIV-MOORE, 2002 WL 31059465, at *1 (S.D. Fla. July 19, 2002) (citations omitted).

## II.    The Court Should *Again* Deny Comity to the French Blocking Statute

As an initial matter, CMA CGM America is not a proper movant.  It is a U.S. corporation not bound by the French Blocking Statute and cannot object to discovery on that basis. Nevertheless, buried at the end of Defendants' Motion are the five factors the Court must consider in deciding whether to grant comity to a statute designed to block U.S. discovery: (1) the importance of the information to the litigation; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means to secure the information; and (5) the extent to which noncompliance with discovery undermines important interests of the U.S. or compliance with discovery undermines important interests of the foreign state.  *Aerospatiale*, 482 U.S. at 544 n.28.

It is Defendants' burden – not Plaintiffs' – to present argument in their motion showing each of these factors weigh in their favor.  *In re Procom Am., LLC*, 638 B.R. 634, 647 n.78 (Bankr. M.D. Fla. 2022) (collecting cases); *see also In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 45, 51 (D.D.C. 2000) ("*Aerospatiale* did not specifically rule on the burden of proof for these factors, but most courts have placed this burden on the party seeking to require first-use of the Convention."). Defendants failed to meet that burden because, in fact, each factor weighs heavily against comity. Indeed, in the context of Defendants' prior motion to stay, this Court already considered France's interest "in controlling access to information within its borders and protecting its citizens from discovery in foreign litigation" and ruled against extending comity to the French Blocking Statute. *CMA CGM S.A.*, 2022 WL 2713737, at *10.

### A.    Defendants Concede the Importance of the Discovery

Defendants concede, as they must, that Plaintiffs seek discovery from S.A. to assist them in proving their claim and that they lose on this factor.  Motion at 4.

### B.    Defendants Fail to Present Any Non-Specific Requests

In a single paragraph, Defendants claim the discovery requests are "extremely broad."  But it is Defendants' burden to identify which requests it objects to as extremely broad.  *In re Procom Am., LLC*, 638 B.R. at 647 n.78.  Defendants only challenge two such requests, and they mis-quote one of them in a manner that makes it seem broader than it is.  Those two challenged requests are, in fact, narrowly tailored and Defendants therefore have not shown this factor weighs in their favor.[8]

In the first example, Plaintiffs requested communications between the Defendants and those whom the Defendants specifically retained to operate in Cuba on their behalf for the purpose of conducting their shipping container business.[9]  The request, on its face, is narrowly tailored.  Defendants know who operates on their behalf in Cuba and their communications with them are directly relevant to this case.  Defendants do not provide any argument explaining why they believe this request is "extremely broad," such as identification of how many entities operate on their

---

[8] In addition to invoking the French Blocking Statute, Defendants raised a number of other objections in their responses to Plaintiffs' first sets of document requests and interrogatories.  *See* Dkt. 99-1 ECF Pages 181-217.  It is unclear to what extent, if any, Defendants are withholding documents and other information on the basis of those objections.  Plaintiffs reserve all rights to challenge those objections if and when they become ripe.

[9] In particular, the request is: "All agreements and communications between you and any Person (including any agent) you appointed or otherwise retained or paid to act on your behalf in Cuba relating to your container shipping services at the Port of Mariel."  Motion at 4.

behalf or how many communications or agreements they have with them.  They simply quoted the request and labeled it "extremely broad."  Motion at 4.

The second allegedly objectionable request seeks communications between Defendants and any United States government agency concerning Defendants' shipping business from the United States to Cuba, and then the request includes a list of the specific types of documents Plaintiffs seek, such as applications to OFAC for a license.  In arguing that the request is not specific, Defendants *failed to quote the portions of the request that specify the specific documents that Plaintiffs seek*.[10]  Motion at 4.  That said, this request identifies the parties on each side of the communication and the subject matter of the communication.  Plaintiffs do not know how to be any more specific and, like the only other request Defendants find objectionable, they simply quote it (in fact, misquote it) and label it "extremely broad" without explanation.

These two requests are far from the request in the only case Defendants cite, which held that a "request for all documents and ESI that 'may be relevant'" is not "narrowly tailored for

---

[10] Below is the request and Defendants omitted the underlined portion from their quotation (that is, the portion showing with more specificity the types of documents requested):

> All documents and communications between you and any agency of the United States government or agency or instrumentality thereof, concerning your container shipping services from the United States to Cuba, including: (a) all applications, and extensions or renewals, for any license or authorization, and the licenses and authorization, from OFAC; (b) all applications, and extensions or renewals, for any license or authorization, and the licenses and authorization, from BIS; (c) all applications, and extensions or renewals, for any license, authorization or permit, and the licenses, authorizations and permits, from any other agency of the United States Government or any United States state government or instrumentality thereof; (d) all documents concerning any violation of law, regulation, or any condition of any license or permit; and/or (e) all documents concerning any audits, inspections, and/or reviews.

Dkt. 99-1 at pp. 233-234.  Defendants also did not cite to the page number where this request appears within their 241-page exhibit, making it more difficult to identify Defendants' incorrect quotation.

purposes of this [comity] analysis." *Salt River Project Agric. Improvement & Power Dist. v. Trench France SAS*, 303 F. Supp. 3d 1004, 1008 (D. Ariz. 2018).

### C.   Defendants Do Not Identify Where the Requested Documents Originated

The third factor to consider is "whether the information originated in the United States." *Aerospatiale*, 482 U.S. at 544 n.28.  In two brief sentences, Defendants make the wrong argument, claiming the information is ***currently located*** in France or on some other server abroad.  Motion at 4-5.  But the inquiry is whether the information that Plaintiffs requested originated in the United States, not where the information is currently located.  *See Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 209 (E.D.N.Y. 2007) (the issue is "whether the 'information ***originated*** in the United States,' not whether the information currently is ***located*** in the United States") (emphasis in original).  Therefore, Defendants failed to meet their burden on this inquiry.  In fact, it is likely that many of the documents that Plaintiffs requested did originate in the United States, as Plaintiffs requested documents relating to Defendants' shipments originating from the United States to Cuba. If Defendants later moved those documents to a server located outside the United States, that action does not subject those documents to the French Blocking Statute and make them non-discoverable. Regardless, Defendants failed to argue otherwise.

### D.   There Are No Alternative Means to Secure the Information

The fourth factor is whether there are alternative means to secure the information Plaintiffs seek.  S.A. argues that the alternative means available here are to subject Plaintiffs' discovery requests to the discretion and veto power of the French government.  As shown above, the French government has already publicly stated it "condemns" the Helms-Burton Act and will use all "instruments at their disposal" to obstruct Helms-Burton Act cases.  Accordingly, requiring the approval of the French government before Plaintiffs are permitted to serve and obtain discovery

in this case is not an alternative means to secure the information Plaintiffs request.  It is a means to frustrate this case.

### E.      This Court Already Correctly Analyzed the State Interests at Play

The final consideration for the Court to weigh is the balance of national interests at play. *Aerospatiale*, 482 U.S. at 544 n.28.  This is precisely the balance this Court already weighed.  *See CMA CGM S.A.*, 2022 WL 2713737, at *10 ("The Balance Of Sovereign Interests Weighs Against A Stay").  Recognizing this, Defendants argue only that the "balance is different here" because France amended the French Blocking Statute.  Motion at 5.  Defendants claim that "the law's non-enforcement is a thing of the past." *Id*.  First, it was not an amendment; it was a decree relating to requests for "sensitive information" from "foreign authorities" and Defendants do not claim Plaintiffs are a foreign authority or that they requested sensitive information.  *See supra* pp. 4-5. But regardless Defendants offer no evidence of a single prosecution under the French Blocking Statute in the year since that amendment.  In fact, in the current Motion and the prior one, they do not cite any prosecution under the French Blocking Statute, ever.  *See CMA CGM S.A.*, 2022 WL 2713737, at *12 ("Defendants offer no evidence of any French national (or anyone for that matter) being prosecuted or penalized for violation of the French or EU Blocking Statute.").

Digging through the 250-plus pages of exhibits reveals that there has only been one prosecution ever under the French Blocking Statute, in 2007, long before the February 2022 decree.  That prosecution involved a French attorney who was fined 10,000 euros for lying to a witness in France to entice the witness to testify in U.S litigation, acting on a criminal complaint the witness filed against the attorney (the "Christopher X" case).  Dkt. 99-1 at 27 of 241 (Lenoir

Decl.).[11]  This is not the first time a French entity pointed to the Christopher X case as a basis to claim it fears prosecution.  Courts have routinely distinguished Christopher X as far from analogous given the unethical conduct involved in that case.  *See, e.g., Connex R.R. LLC v. AXA Corp. Sols. Assurance*, No. CV1602368ODWRAOX, 2017 WL 3433542, at *17 (C.D. Cal. Feb. 22, 2017) (distinguishing Christopher X); *In re Photochromic Lens Antitrust Litig.*, No. 8:10-MD-2173-T-27EAJ, 2012 WL 12904331, at *2 (M.D. Fla. May 2, 2012) (same); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 278 F.R.D. 51, 54 (E.D.N.Y. 2010) (same).  Regardless, that case does not support Defendants' claim that the balance of interests has changed (the case is 15 years old), nor can it serve as evidence of the French government allegedly having a renewed interest in bringing prosecutions under the French Blocking Statute, since it is the only prosecution ever under the Blocking Statute and it was initiated by a private citizen's complaint.

### III.   The Court Should Not Consider S.A.'s Purported Fear of Prosecution

The Court should not put great weight on S.A.'s claimed fear of prosecution for violating the French Blocking Statute.  S.A. routinely violates the French Blocking Statute in other cases without ever raising any concern over prosecution or objecting on the basis of that foreign law. A search of just federal court cases involving CMA CGM S.A. returns over 70 cases, over 30 of which S.A. filed as plaintiff.  *See* Exhibit C.  A random selection shows S.A. actively litigating and engaging in discovery without invoking the French Blocking Statute.  A few examples of those include:

- *Neely v. CMA CGM S.A.*, No. 2021-cv-00023 (N.D. Miss. filed Feb. 9, 2021).
- *Allianz Global Corp. & Specialty SE v. CMA CGM S.A.*, No. 2021-cv-01044 (S.D.N.Y. filed Feb. 5, 2021).

---

[11] Although Professor Lenoir claims the "French Government has also indicated a renewed interest in enforcing" the French Blocking Statute, her sole authority for that speculation is a report written by a single member of the French parliament.  *Id*. at ¶ 32.

- *Transcend Shipping Systems, LLC v. CMA CGM S.A.*, No. 2021-cv-00018 (W.D. Tex. filed Jan. 8, 2021).
- *CMA CGM S.A. v. Ocean Line Logistics, Inc.*, No. 20-cv-06210 (C.D. Cal. filed July 13, 2020).
- *CMA CGM S.A. v. Leader Int'l Express Corp.*, No. 19-cv-357 (E.D. Va. filed July 10, 2019).
- *CMA CGM S.A. v. Asia-Global Renewable Energy Corp.*, No. 2016-cv-08458 (C.D. Cal. filed Nov. 14, 2016).
- *Lincoln Transportation Services, Inc. v. CMA CGM S.A.*, No. 2015-cv-09234 (C.D. Cal. filed Nov. 30, 2015).
- *CMA CGM S.A. v. N.E. Industries LLC*, No. 15-cv-13078 (E.D. Mich. filed Aug. 28, 2015).
- *CMA CGM S.A. v. China Container Line Ltd.*, No. 15-cv-02296 (E.D.N.Y. filed Apr. 22, 2015).
- *CMA CGM S.A. v. Deckwell Sky (USA) (Inc).*, No. 14-cv-135 (E.D. Va. filed Apr. 4, 2014).

Even ***after*** the French government purportedly "strengthened" the French Blocking Statute in February 2022 (Motion at 2), S.A. continued fearlessly violating that statute by engaging in discovery in U.S. courts when doing so suited its interests. *See, e.g., CMA CGM S.A. v. Ocean Line Logistics Inc.*, No. 20-cv-06210, Dkt. 70 (C.D. Cal. May 12, 2022) (Joint Case Management Statement). Most recently, in a case where S.A. presumably was prepared to engage in discovery, S.A. instead obtained a default judgment in excess of $3.8 million. *CMA CGM S.A. v. Biomass Pro Inc.*, No. 19-cv-13647, Dkt. 19 (D.N.J. July 14, 2022). Moreover, S.A. routinely produces the same exact types of documents Plaintiffs request here, such as bills of lading, service contracts, and communications with shippers, without any objection under the French Blocking Statute. *See, e.g., Deckwell Sky (USA) (Inc).*, No. 14-cv-135, at Dkt. 18 (E.D. Va. Jan. 21, 2015) (attaching to a summary judgment motion over 40 exhibits, including bills of lading, service contracts, and shipper communications). S.A. cannot in good faith invoke the fear of prosecution for participating in U.S. discovery only in cases where it suits them.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

Motion, confirming its prior ruling that the Court will not extend international comity to the French

Blocking Statute.

Dated:   March 3, 2023

David A. Baron, Esq.
(admitted *pro hac vice*)
dbaron@bcrlaw.com
Melvin White, Esq. (admitted
*pro hac vice*)
mwhite@bcrlaw.com
Laina C. Lopez, Esq.
(admitted *pro hac vice*)
lcl@bcrlaw.com
Jared R. Butcher, Esq.
(admitted *pro hac vice*)
jbutcher@bcrlaw.com
Berliner Corcoran & Rowe
LLP
1101 17th Street, N.W., Suite
1100
Washington, D.C. 20036-
4798
Tel.: (202) 293-5555
Fax: (202) 293-9035

Richard W. Fields, Esq.
(admitted *pro hac vice*)
fields@fhcfirm.com
Martin Cunniff, Esq.
(admitted *pro hac vice*)
MartinCunniff@fhcfirm.com
Fields Han Cunniff PLLC
1701 Pennsylvania Ave,
N.W., Suite 200
Washington, D.C. 20006
Tel.: (833) 382-9816

***Counsel for Plaintiffs***

Respectfully submitted,

*/s/ John S. Gaebe*
John S. Gaebe, Esq.
Florida Bar No. 304824
johngaebe@gaebelaw.com
Law Offices of John S. Gaebe P.A.
5870 SW 96 St.
Miami, FL 33156
Tel.: (305) 607-4755

William R. Boeringer, Esq.
Florida Bar No. 347191
wboeringer@admiral-law.com
William B. Milliken, Esq.
Florida Bar No. 143193
wmilliken@admiral-law.com
Horr, Skipp & Perez, P.A.
Two Datran Center, Suite 1700
9130 S. Dadeland Boulevard
Miami, FL 33156
Tel.: (305) 670-2525
Fax: (305) 670-2526

***Counsel for Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of March, 2023, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ John S. Gaebe*
John S. Gaebe, Esq.
Florida Bar No. 304824