## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-CV-22778-RAR

**ODETTE BLANCO DE FERNANDEZ**
*née* **BLANCO ROSELL**, *et al.*,

      Plaintiffs,

v.

**CMA CGM S.A. (*a/k/a* CMA CGM**
**THE FRENCH LINE, *a/k/a* CMA CGM GROUP)**, *et al.*,

      Defendants.

_____/

### ORDER ADOPTING REPORT AND RECOMMENDATION
### AND GRANTING IN PART MOTION TO DISMISS

This case presents a fact pattern increasingly familiar to American courts: the story of Cuban nationals who, following the Cuban Revolution, had their property confiscated and their lives upended. In the wake of this upheaval, many of these nationals fled Cuba and found a new home in the United States, eventually becoming citizens of this country. These now-American citizens were provided a hopeful remedy in 1996 with the passage of the Helms-Burton Act, 22 U.S.C. § 6021 *et seq.*, which sought to compensate them for their confiscated property. As explained below, that remedy was effectively a dead letter until 2019. Some of those who originally fled Cuba, like most of the original owners of the property subject to this litigation, died before they could bring a claim. But with the Helms-Burton Act's civil remedy now available, plaintiffs have vigorously pursued the remedy they were promised nearly three decades ago.

Before the Court is United States Magistrate Judge Melissa Damian's Report and Recommendation ("Report"), [ECF No. 138], filed on April 30, 2023. The Report recommends that the Court grant in part and deny in part Defendants' Combined Motions to Dismiss Plaintiffs' Amended Complaint ("Motion to Dismiss" or "MTD"), [ECF No. 72], and deny Plaintiffs' Motion

to Stay Ruling on Collateral Estoppel ("Motion to Stay"), [ECF No. 119].[1]  *See* Report at 1–2.

The Court, having reviewed the Report, the Motion to Dismiss, the Motion to Stay, the record, and

being otherwise fully advised, it is hereby

      **ORDERED AND ADJUDGED** that the Report, [ECF No. 138], is **AFFIRMED AND**

**ADOPTED** as set forth herein.

<u>**BACKGROUND**</u>

      At this stage, the Court assumes the parties' familiarity with the underlying facts of this

case but will summarize the most pertinent allegations and procedural history.

**I.  Cuba's Seizure of Property**

      Following the regime change imposed by Fidel Castro in Cuba, the government "ban[ned]

[] free and fair democratic elections," perpetuated "violations of fundamental human rights," and

continually oppressed the Cuban people through a variety of mechanisms, including confiscation

of their property.  22 U.S.C. §§ 6021(2), (4), (15).  As alleged in the Amended Complaint, Plaintiff

Odette Blanco de Fernandez *née* Blanco Rosell ("Ms. Fernandez"), and her siblings Alfredo

Blanco Rosell, Florentino Blanco Rosell, Enrique Blanco Rosell, and Byron Blanco Rosell (the

"Blanco Rosell Siblings") were victims of these confiscations.  *See* Amended Complaint, [ECF

No. 65] ¶¶ 2–4.  Shortly after the government rose to power, it confiscated all "property and rights,

whatever their nature" from the Blanco Rosell Siblings other than property considered "strictly of

a personal nature."  Am. Compl. ¶ 2.  To effectuate the confiscation of the Blanco Rosell Siblings'

---

[1] Both motions have been extensively briefed and are ripe for review.  *See* Pls.' Opp'n to Defs.' Combined Mots. to Dismiss Pls.' Am. Compl. ("MTD Resp."), [ECF No. 77]; Defs.' Reply Supporting Combined Mot. to Dismiss Am. Compl. ("MTD Reply"), [ECF No. 79]; Defs.' Opp'n to Pls.' Mot. to Stay Ruling on Collateral Estoppel, [ECF No. 125]; Pls.' Reply in Supp. of Mot. to Stay Ruling on Collateral Estoppel, [ECF No. 130].  The parties submitted objections to the Report ("Plaintiffs' Objections" and "Defendants' Objections," respectively), *see* [ECF Nos. 142, 144], as well as responses to the other side's Objections, [ECF Nos. 145–46].  Additionally, the parties have submitted multiple Notices of Supplemental Authority and related responses for the Court's consideration.  *See* [ECF Nos. 123, 127, 136–37, 147–50].

property, the Cuban government published Resolution No. 436 in the Cuban Official Gazette on September 29, 1960, which identified both the Blanco Rosell Siblings and their property. *Id.* None of the Blanco Rosell Siblings were citizens of the United States when the Cuban government seized their property. Am. Compl. ¶ 5. After their property was confiscated, the Blanco Rosell Siblings fled Cuba, settled in the United States, and became United States citizens prior to March 12, 1996. *Id.* Ms. Fernandez, who is 92, is now the only surviving Blanco Rosell Sibling. *Id.*

The Cuban government confiscated two groups of property from the Blanco Rosell Siblings relevant to this action. The first consisted of a "70-Year Concession" the Cuban government previously granted to Maritima Mariel SA ("Maritima Mariel"), a Cuban corporation the Blanco Rosell Siblings equally owned. Am. Compl. ¶¶ 83–86. Granted on August 15, 1955, the 70-Year Concession allegedly allowed Maritima Mariel to "plan, study, execute, maintain, and exploit public docks and warehouses in the Bay of Mariel Bay, province of Pinar del Rio Province, and the construction of new buildings and works." Am. Compl. ¶ 86. The 70-Year Concession also granted Maritima Mariel several "exceptional rights in the Bay of Mariel" enumerated in the Amended Complaint. Am. Compl. ¶ 87. Plaintiffs allege this 70-Year Concession "extend[ed] to all of Mariel Bay." Am. Compl. ¶ 110. Both Maritima Mariel and the 70-Year Concession were subsequently confiscated by the Cuban government. Am. Compl. ¶ 89.

The second group of property relates to "several other companies" and land holdings the Blanco Rosell Siblings owned, including Compañía Azucarera Mariel S.A. ("Azucarera Mariel"). Am. Compl. ¶ 90. Azucarera Mariel owned and operated a sugar mill known as "Central San Ramón," which the Blanco Rosell Siblings bought along with approximately 11,000 acres of land located "southeast, south and west of Mariel Bay," that included "numerous improvements such as roads, railways, buildings, and utilities." *Id.* The Blanco Rosell Siblings also owned a farm known as "Tapia" located on the west side of Mariel Bay. Am. Compl. ¶ 93. The Cuban

government confiscated all of this property.  Am. Compl. ¶¶ 92–93.  Eventually, the Cuban government incorporated the Blanco Rosell Siblings' confiscated property into the *Zona Especial de Desarrollo Mariel* (Mariel Special Development Zone) ("ZEDM"), a "special economic zone in Cuba with its own legal structure."  Am. Compl. ¶¶ 104, 107–08.  Located within the ZEDM is the *Terminal de Contenedores del Mariel* (Container Terminal of Mariel) ("TCM"), a "[c]ontainer [t]erminal" that "is part of the Port of Mariel" and "within the Bay of Mariel."  Am. Compl. ¶ 33.

## II.  The Helms-Burton Act & Instant Litigation

The story of the Blanco Rosell Siblings is far from unique.  "[M]illions of [Cuban] citizens," "thousands of United States nationals," and "thousands more Cubans" who arrived in the United States and "later became naturalized citizens of the United States" had their property confiscated in the midst of the Cuban government "trampl[ing] on the fundamental rights of the Cuban people."  22 U.S.C. § 6081(3).  In response, Congress passed the Cuban Liberty and Democratic Solidarity Act of 1996, known as the LIBERTAD or Helms-Burton Act (also referred to as "the Act").  *See* Am. Compl. ¶ 1.  The Helms-Burton Act was passed to ensure that "the victims of [the Cuban government's] confiscations . . . [were] endowed with a judicial remedy in the courts of the United States" to deny "traffickers [in the confiscated property] any profits from economically exploiting Castro's wrongful seizures."  22 U.S.C. § 6081(11).  To achieve this end, the Act provides that "any person that . . . traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property."  *Id.* § 6082(a)(1)(A).

But the promise that the Helms-Burton Act would provide a civil remedy to those who had their property taken went unrealized for decades.  The Act allows the President of the United States to "suspend the right to bring an action under [§ 6082] with respect to confiscated property for a period of not more than 6 months if the President determines . . . that such suspension is necessary

to the national interests of the United States and will expedite a transition to democracy in Cuba."
22 U.S.C. § 6085(c)(1)(B).  After the Helms-Burton Act was passed and signed into law, every
President proceeded to suspend the right to bring claims under § 6082 every six months until May
2, 2019, when, for the first time, the Helms-Burton Act's civil remedy finally became available.
Am. Compl. ¶¶ 65–66.

Plaintiffs then instituted this action against Defendants CMA CGM S.A. ("CMA France")
and CMA CGM (AMERICA) LLC ("CMA America"), two companies engaged in international
maritime transportation.  *See* Am. Compl. ¶¶ 26, 39.  As accurately reflected in the Report, CMA
France and CMA America have done business in Florida and Cuba, including the parts of Mariel
Bay encompassing the ZEDM and TCM as well as the surrounding areas that allegedly include
the Blanco Rosell Siblings' confiscated property.  *See* Report at 4–6.  Plaintiffs accordingly allege
that Defendants are trafficking in the Blanco Rosell Siblings' confiscated property in violation of
the Helms-Burton Act.  *Id.*  As Ms. Fernandez is the only surviving Blanco Rosell Sibling, the
remaining claims in this action are asserted by either (1) the personal representatives of the
deceased Blanco Rosell Siblings' estates (the "Estate Plaintiffs"); and (2) those who inherited the
deceased Blanco Rosell Siblings' interests in the properties (the "Inheritor Plaintiffs").  Am.
Compl. ¶¶ 8–25.

### III. *Seaboard Marine*

Plaintiffs have not only pursued claims against CMA France and CMA America—they
have also filed a number of cases alleging violations of § 6082 of the Act.  *See* MTD at 6 n.4
(collecting cases).  Among these other actions is *De Fernandez v. Seaboard Marine, Ltd.*, No.
20-25176 (S.D. Fla.), where Plaintiffs also pursued claims based on the 70-Year Concession.  *See*
Report at 33.  The *Seaboard Marine* court made two rulings relevant to the instant action.  First, it
dismissed the claims of the Estate and Inheritor Plaintiffs, holding that none of these plaintiffs

acquired their claims before the statutory cutoff of March 12, 1996. *De Fernandez v. Seaboard Marine, Ltd.*, No. 20-25176, 2021 WL 3173213, at *8–9 (S.D. Fla. July 27, 2021).

Then, at the summary judgment stage, the court found the geographic scope of the 70-Year Concession was much narrower than Plaintiffs alleged and only encompassed "the east side of the Bay [of Mariel]" rather than "the entire Bay." *De Fernandez v. Seaboard Marine, Ltd.*, No. 20-25176, 2022 WL 3577078, at *12 (S.D. Fla. Aug. 19, 2022). As a result, the court granted summary judgment in favor of the defendants in *Seaboard Marine* because their activities did not constitute trafficking in the 70-Year Concession. *Id.* at *18; *see* Report at 33. A final judgment was then entered against Ms. Fernandez in that case, which is currently still on appeal. *See De Fernandez v. Seaboard Marine Ltd.*, No. 22-12966 (11th Cir.).

**IV.  Motion to Dismiss & Motion to Stay**

Defendants filed their Motion to Dismiss on September 27, 2022, arguing Plaintiffs fail to state a claim upon which relief can be granted for a variety of reasons more thoroughly discussed below. *See generally* MTD. They also argue this Court does not have personal jurisdiction over CMA France. MTD at 19–25. Finally, Defendants move to collaterally estop Plaintiffs from relitigating the scope of the 70-Year Concession in light of the final judgment in *Seaboard Marine*, and accordingly, seek dismissal of any claim based on the 70-Year Concession. MTD at 16–19.

After the Motion to Dismiss was filed, however, Plaintiffs reached a settlement in principle with the defendants in *Seaboard Marine* while that case was pending on appeal that was conditioned on the *Seaboard Marine* court vacating its summary judgment order and final judgment. Mot. to Stay at 1. The *Seaboard Marine* parties then filed an Agreed Motion to Vacate with the district court. *See id.* at 2. Following that, Plaintiffs filed their Motion to Stay, asking this Court to reserve adjudicating the issue of collateral estoppel until the *Seaboard Marine* court issued a ruling on the Agreed Motion to Vacate. *See generally* Mot. to Stay. The Report

recommends the Court deny that request.  Report at 45.  Then, circumstances changed further still.

After Judge Damian issued the Report, the *Seaboard Marine* court denied the Agreed Motion to

Vacate.  *See* Defs.' Notice of Supplemental Authority on Defs.' Combined Mot. to Dismiss, [ECF

No. 147].  The issues presented by the Motion to Stay are now moot.  The Court therefore proceeds

on the merits of Defendants' Motion to Dismiss.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim,"

but a complaint must set forth more than "labels and conclusions" or a mere "formulaic recitation

of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Twombly*, 550 U.S. at 570).  In addition to accepting the complaint's allegations

as true, the court must draw all inferences in the plaintiff's favor when determining if a complaint

states a claim to relief.  *Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017).  But courts

"are not bound to accept as true a legal conclusion couched as a factual allegation," *Iqbal*, 556

U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), and need not accept as true allegations that are

"more conclusory than factual."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir.

2012).  Ultimately, "determining whether a complaint states a plausible claim for relief is a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense."  *Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022) (alterations

accepted) (quoting *Iqbal*, 556 U.S. at 679).

This Court reviews *de novo* the determination of any disputed portions of the Magistrate

Judge's Report.  *United States v. Powell*, 628 F.3d 1254, 1256 (11th Cir. 2010).  Any portions of

the Report to which no specific objection is made are reviewed only for clear error.  *Macort v.*

*Prem, Inc*., 208 F. App'x 781, 784 (11th Cir. 2006); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate[] [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). A proper objection "identifie[s] specific findings set forth in the [Report] and articulate[s] a legal ground for objection." *Leatherwood v. Anna's Linens Co*., 384 F. App'x 853, 857 (11th Cir. 2010). Where a party raises a new argument before the district court, the district court retains discretion to not reach the argument. *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.")

## ANALYSIS

### I. Personal Jurisdiction

In the Motion to Dismiss, CMA France moves to dismiss the claims against it for lack of personal jurisdiction. MTD at 19–25. The Report concludes this Court has personal jurisdiction over CMA France and accordingly recommends the Court deny the Motion to Dismiss as to this ground. Report at 57. CMA France does not object to that recommendation. *See generally* Defs.' Objs. Accordingly, the Court reviews this conclusion only for clear error and finds none. *Macort*, 208 F. App'x at 784. The Court agrees it has personal jurisdiction over CMA France, and the Motion to Dismiss is denied to the extent it seeks dismissal on this ground.

### II. Helms-Burton Act Claims

The Helms-Burton Act provides a right of action against "any person that . . . traffics in property which was confiscated by the Cuban Government on or after January 1, 1959." 22 U.S.C. § 6082(a)(1)(A). "[A]ny United States national who owns the claim to such property" may pursue an action against those who traffic in the confiscated property. *Id.* But the Act provides that when the property was confiscated before March 12, 1996, the United States national must have

"acquire[d] ownership of the claim [to the property] before March 12, 1996." *Id.* § 6082(a)(4)(B). To state a claim under the Helms-Burton Act, a plaintiff must allege (1) the Cuban government confiscated the plaintiff's property after January 1, 1959; (2) the defendant trafficked in the confiscated property after the effective date of the Act; (3) the plaintiff is a United States national; and (4) the plaintiff owns a claim to the confiscated property. *See Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 930 (11th Cir. 2023); *see also Havana Docks Corp. v. Carnival Corp.*, 592 F. Supp. 3d 1088, 1150–51 (S.D. Fla. 2022) (stating the elements of a Helms-Burton trafficking claim).

Defendants move to dismiss Plaintiffs' Helms-Burton Act claims on several grounds. They argue that (1) the claims of the Inheritor and Estate Plaintiffs are barred because these plaintiffs did not acquire their claims to the property until after the statutory cutoff of March 12, 1996 (just as the *Seaboard Marine* court concluded); (2) Plaintiffs cannot state a § 6082 trafficking claim because the Blanco Rosell Siblings were not United States nationals when their property was confiscated; (3) a plaintiff who only had a shareholder interest in a company that owned confiscated property cannot maintain a Helms-Burton Act claim; (4) Plaintiffs must allege the confiscations were wrongful, which Defendants equate to being in violation of international law; and (5) Plaintiffs' claims relating to the 70-Year Concession must be dismissed because the *Seaboard Marine* court previously determined the scope of the 70-Year Concession and found it did not extend to the portions of Mariel Bay at issue here. *See generally* MTD. The Court will address each argument in turn. But before proceeding, the Court notes that Defendants frequently couch some of their challenges with references to "standing." *See, e.g.*, MTD at 9.

Courts have routinely rejected standing arguments where a defendant is simply attacking the merits of a Helms-Burton Act claim. *See Garcia-Bengochea*, 57 F.4th at 922–23 (noting in the context of Article III standing that "[a]s far as [the Eleventh Circuit] can tell, all the courts that

have addressed the [standing] issue . . . have concluded" that plaintiffs suing on the basis of an alleged interest in confiscated property have "standing to bring a claim under Title III"); *Glen v. Am. Airlines, Inc.*, 7 F.4th 331, 336 (5th Cir. 2021) ("[W]hen the existence of a protected property interest is an element of the claim, deciding whether the interest exists virtually always goes to the merits rather than standing." (citation omitted)).  Accordingly, the Court does not separately address Defendants' references to standing because these challenges are simply attacks on the merits.  With that, the Court turns to Defendants' varied arguments.

### a. Claims of the Inheritor and Estate Plaintiffs

First, Defendants argue the Inheritor and Estate Plaintiffs cannot pursue claims under the Helms-Burton Act because they did not acquire claims to the confiscated property until after March 12, 1996.  MTD at 7–9.  The Report, relying on the Eleventh Circuit's recent decision in *Garcia-Bengochea*, agrees.  Report at 16–17.  Plaintiffs object to this conclusion only as it relates to the Estate Plaintiffs.  Because they did not object to the Report's conclusion as to the Inheritor Plaintiffs, the Court reviews that conclusion only for clear error.[2]

Where the Cuban government confiscated property before March 12, 1996, a United States national cannot bring a § 6082 trafficking claim based "on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996."  22 U.S.C. § 6082(a)(4)(B).  Whether the Inheritor and Estate Plaintiffs may maintain their claims hinges on

---

[2] In their Motion to Dismiss, Defendants also argue the Estate and Inheritor Plaintiffs should be collaterally estopped from relitigating whether they can maintain a Helms-Burton Act trafficking claim in light of *Seaboard Marine*.  MTD at 16–19; *see Seaboard Marine*, 2021 WL 3173213, at *8–9 (holding the Inheritor and Estate Plaintiffs could not maintain Helms-Burton Act claims).  The Report seemingly does not respond to this argument.  This is unsurprising, because Defendants only reference this argument in passing, relegating much of it to parentheticals and sometimes omitting it from their discussion of collateral estoppel altogether.  MTD at 16–19; *see generally* MTD Reply (not referencing this estoppel argument).  Indeed, this argument borders on waived.  *Cf. Christmas v. Harris Cnty., Ga.*, 51 F.4th 1348, 1354 n.4 (11th Cir. 2022).  Nevertheless, because the Court agrees the Inheritor and Estate Plaintiffs cannot maintain claims under the Helms-Burton Act, it does not need to consider the alternative avenue of collateral estoppel on this issue.

what the word "acquires" means in the Helms-Burton Act.  In all cases involving questions of statutory interpretation, a court "begin[s] where [it] must—with the text."  *Garcia-Bengochea*, 57 F.4th at 930.  When determining the meaning of a statute, courts "proceed from the understanding that unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning."  *Barton v. U.S. Att'y Gen.*, 904 F.3d 1294, 1298 (11th Cir. 2018) (quoting *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013)).  And "[i]f the statutory language is plain, [a court] must enforce it according to its terms."  *King v. Burwell*, 576 U.S. 473, 486 (2015).  As explained by the Fifth Circuit when addressing the same issue presented here, the "plain meaning of 'acquires' is 'to gain possession or control of; to get or obtain.'"  *Glen*, 7 F.4th at 336 (alteration accepted) (quoting *Acquire*, BLACK'S LAW DICTIONARY (11th ed. 2019)).  "Acquires" also means "[t]o come into possession, control, or power of disposal of."  *Id.* (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY, at 18 (1993)).  Both of these definitions "include[] inheritance." *Garcia-Bengochea*, 57 F.4th at 931 (quoting *Glen*, 7 F.4th at 336).

The Report correctly observes that the Eleventh Circuit recently agreed with the Fifth Circuit and squarely held a person who inherits a claim to confiscated property does not acquire the claim to the property until the inheritance occurs.  Report at 17; *Garcia-Bengochea*, 57 F.4th at 930–31.  Therefore, where a plaintiff inherits a claim to property the Cuban government confiscated before March 12, 1996, the plaintiff must have inherited the claim before that date to state a claim arising under § 6082.  *See* 22 U.S.C. § 6082(a)(4)(B); *see also Garcia-Bengochea*, 57 F.4th at 931 (noting that "[e]very court to address the issue has read the statute the same way" (quoting *Glen*, 7 F.4th at 336)).  The Report did not clearly err in concluding the Inheritor Plaintiffs acquired their claims to the property after March 12, 1996 and their claims must therefore be dismissed.

While the Report does not separately address the claims of the Estate Plaintiffs, the Court also agrees their claims must be dismissed. "In the absence of an expression of contrary intent, the survival of a federal cause of action is a question of federal common law." *United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993). Because those who inherited certain claims to property after the statutory cutoff cannot bring § 6082 claims, it is clear from the text of the statute that Congress did not want § 6082 claims to survive a plaintiff's death. *See Seaboard Marine*, 2021 WL 3173213, at *9. So, the Court must determine whether the claims brought by the personal representatives are the claims of the deceased Blanco Rosell Siblings. Under Florida law, the right to a decedent's property vests in the decedent's heirs and devisees upon death. *See, e.g.*, Fla. Stat. § 732.101(2) ("The decedent's death is the event that vests the heirs' right to the decedent's intestate property."); Fla. Stat. § 732.514 ("The death of the testator is the event that vests the right to devises unless the testator in the will has provided that some other event must happen before a devise vests."). It follows that the claims of the Blanco Rosell Siblings ceased to be vested in them at the moment of their deaths, and the Estate Plaintiffs' claims must be dismissed because they are new claims acquired after the statutory cutoff. *See also Seaboard Marine*, 2021 WL 3173213, at *8–9 ("[T]he United States national who acquired ownership of the claim must be the *same* United States national who brings the Title III action."); *De Fernandez v. Crowley Holdings, Inc.*, 593 F. Supp. 3d 1162, 1171–72 (S.D. Fla. 2022) (same).

The Estate Plaintiffs rely on a single section of Florida law that defines an "[e]state" as "the property of a decedent that is the subject of administration." Fla. Stat. § 731.201(14). Seizing on this language, the Estate Plaintiffs seem to argue their claims are still the property of the deceased Blanco Rosell Siblings rather than the claims of those who inherited the claims or the claims of the estates as separate legal entities. MTD Resp. at 3–5. There appear to be conflicting authorities on whether under Florida law the property in an estate is vested in the estate itself or

has vested in the person who inherits it. *Compare, e.g.*, Fla. Stat. § 732.101(2); Fla. Stat. § 732.514, *with Depriest v. Greeson*, 213 So. 3d 1022, 1025 (Fla. 1st DCA 2017) ("[W]e do not agree that the estate had no legal ownership interest in Decedent's car."); *Sharps v. Sharps*, 214 So. 2d 492, 495 (Fla. 3d DCA 1968) ("Upon [the husband's] death, in the twinkling of a legal eye, that check became an asset of the husband's estate."). Whether the claims to the property previously owned by the Blanco Rosell Siblings are now vested in their estates or those who inherited the claims, however, does not matter, because both would have gained the claims to the property after the statutory cutoff. Whatever can be made of this apparent conflict in the law, the Estate Plaintiffs provide no authority establishing the property within an estate is still vested in the decedent. The Report was therefore correct to conclude the Estate Plaintiffs cannot maintain their claims.

Plaintiffs invoke the Due Process Clause of the Fifth Amendment as a last resort, but the Court finds this issue inadequately presented.[3] The Fifth Amendment's Due Process Clause applies "the principles of equal protection" found in the Fourteenth Amendment against the federal government. *See Swisher Int'l, Inc. v. Schafer*, 550 F.3d 1046, 1059 n.13 (11th Cir. 2008). There are "three broad categories" of equal protection claims: (1) claims where the statute discriminates on its face; (2) claims where the statute is neutral on its face but where neutral application has a "disparate impact" on a particular group; and (3) claims where a defendant is "unequally administering a facially neutral statute." *E&T Realty v. Strickland*, 830 F.2d 1107, 1112 n.5 (11th Cir. 1987). Plaintiffs relying on a disparate impact theory must prove purposeful discrimination. *See id.*

The Inheritor and Estate Plaintiffs argue that interpreting the statute to disallow estates or inheritors from bringing claims would violate the equal protection component of the Fifth

---

[3] Plaintiffs note in their Objections that the Report does not address this argument. Pls.' Objs. at 15; *see generally* Report.

Amendment's Due Process Clause because it would only allow natural persons to bring claims during their lives yet allow corporations to hold their claims "in perpetuity." MTD Resp. at 4. While Plaintiffs are unclear about which equal protection theory they rely on, they seemingly assert a disparate impact theory since the text of the statute is clearly neutral on its face. *See* 22 U.S.C. § 6082(a)(4)(B).

But Plaintiffs' sole citation in support of their equal protection argument is about equal protection broadly and does not address a disparate impact theory. *See* MTD Resp. at 4; *see generally Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71 (1988). This single citation—to a case that does not address the only theory Plaintiffs appear to advance—fails to adequately present this issue. *Cf. Christmas*, 51 F.4th at 1354 n.4 (stating that a "passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it" (citation omitted)). Indeed, the Inheritor and Estate Plaintiffs completely fail to address the fact that the statute is facially neutral. Exacerbating this dearth of support is Plaintiffs' failure to articulate any basis for finding Congress purposefully discriminated against natural persons when passing the Helms-Burton Act. "The Court will not serve as counsel's law clerk and make the arguments that should have been developed by each side." *See Barmapov-Segev v. City of Miami*, No. 19-23742, 2019 WL 6170332, at *5 (S.D. Fla. Nov. 20, 2019).

And while the Court does not reach the merits of the argument, it expresses severe doubts about this position given that Plaintiffs simply rely on the fact that entities, as a practical matter, can outlive natural persons. Both natural persons and entities are endowed with the same civil remedy, and all of the limitations on bringing claims apply equally. Additionally, because Plaintiffs do not allege discrimination on the basis of a suspect class, the statute would only have to pass rational basis review. *Checker Cab Operators, Inc. v. Miami-Dade Cnty.*, 899 F.3d 908, 921 (11th Cir. 2018). Even if the Court assumes the Helms-Burton Act treats the Inheritor and

Estate Plaintiffs unequally they have still failed to explain why it does not pass the "easily met" standard of rational basis review. *Id.* (quoting *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009)).

Accordingly, all claims in this action except for those asserted by Plaintiff Odette Blanco de Fernandez *née* Blanco Rosell must be dismissed because she is the only Plaintiff that acquired ownership of her claim before March 12, 1996.[4]

### b. Whether Plaintiffs Must Have Been U.S. Nationals at the Time of Confiscation

Defendants next move to dismiss all claims because the Blanco Rosell Siblings were not United States nationals at the time their property was confiscated. MTD at 9–10. The Report recommends the Court deny the Motion on this ground because the Helms-Burton Act does not require that plaintiffs be United States nationals at the time the Cuban government confiscates their property. Report at 25. The Court agrees with the Report.

Again, issues of statutory interpretation "must begin, and usually end[], with the text of the statute." *United States v. Stevens*, 997 F.3d 1307, 1314 (11th Cir. 2021) (quoting *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 237 (11th Cir. 1995)). If that text is "plain and unambiguous, there is no need for further inquiry," *id.* (quoting *People for the Ethical Treatment of Animals, Inc. v. Miami Seaquarium*, 879 F.3d 1142, 1146 (11th Cir. 2018)), and the court simply enforces the terms of the statute. *King*, 576 U.S. at 486.

Here, the text of the statute is clear: there is nothing requiring a plaintiff to be a United States national at the time the plaintiff's property is confiscated by the Cuban government. The statute provides that one who traffics in confiscated property is "liable to *any United States national* who owns the claim to such property." 22 U.S.C. § 6082(a)(1)(A) (emphasis added).

---

[4] While only Plaintiff Odettee Blanco de Fernandez *née* Blanco Rosell's claims may proceed, the remainder of the Court's analysis applies equally to all claims asserted in this action. The Court will therefore continue to refer to Plaintiffs collectively.

"When 'a statute includes an explicit definition' of a term, '[the court] must follow that definition[.]'" *Van Buren v. United States*, 141 S. Ct. 1648, 1657 (2021) (quoting *Tanzin v. Tanvir*, 141 S. Ct. 486, 490 (2020)).  As reflected in the Report, the Helms-Burton Act defines "United States national," in relevant part, as "*any* United States citizen."   22 U.S.C. § 6023(15)(A) (emphasis added).  "[T]he word 'any' has an expansive meaning." *Babb v. Wilkie*, 140 S. Ct. 1168, 1173 n.2 (2020) (quoting *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008)).  "Any" usually "means all," *Clover v. Total Sys. Servs.*, 176 F.3d 1346, 1353 (11th Cir. 1999) (internal quotation marks omitted), or "one or some indiscriminately of whatever kind." *Patel v. Garland*, 142 S. Ct. 1614, 1622 (2022) (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY, at 97).

Beginning with the text of the statute, Congress's use of the expansive phrase "any United States citizen" shows it clearly meant to provide a civil remedy to plaintiffs who are now United States citizens but were not when their property was confiscated.  These plaintiffs are just as much United States citizens as those who were already citizens when the Cuban government confiscated the relevant property.  *See Cent. Santa Lucia, L.C. v. Expedia Grp.*, No. 22-cv-00367-CFC, ECF No. 34, at 3 (D. Del. June 22, 2023) ("Nothing in the Helms-Burton Act, however, requires a plaintiff to have been a United States national at the time Cuba confiscated the property in question."); *De Fernandez v. Crowley Holdings, Inc.*, No. 21-20443, 2023 WL 2646346, at *2 (S.D. Fla. Mar. 27, 2023) ("Nothing in the statutory language mandates that the owner of the claim to the confiscated property be a United States national at the time of the taking."); *see also Garcia-Bengochea*, 57 F.4th at 932 (Jordan, J., concurring) ("For many Cubans who had property confiscated by the Cuban government, *and who later became U.S. nationals*, Title III of the Act was the only remedy available to obtain monetary compensation." (emphasis added)).

Defendants cite *Regueiro v. American Airlines, Inc.*, No. 19-23965, 2022 WL 2399748 (S.D. Fla. May 20, 2022), *report and recommendation adopted in part*, 2022 WL 2352414 (S.D.

Fla. June 30, 2022), in support of their argument that a plaintiff must have been a United States national at the time their property was confiscated. The Court disagrees with the reasoning in *Regueiro*. Like this Court, the *Regueiro* court recognized that "[a]bsent from [the] subsection defining liability for trafficking is any explicit condition that the confiscation have deprived a United States national of the property at issue." *Id.* at *6. Rather than end the inquiry there, the court proceeded to look at the findings within the statute and determined Congress only intended to provide a remedy to plaintiffs who were United States nationals at the time their property was taken. *Id.* at *6–7. But as recognized by the *Regueiro* court, the text of the civil remedy section is clear, so this Court finds no need to go beyond it. *See Babb*, 140 S. Ct. at 1177 (noting that "where, as here, the words of a statute are unambiguous, the judicial inquiry is complete" (cleaned up)); *cf. Georgia v. President of the U.S.*, 46 F.4th 1283, 1300 (11th Cir. 2022) (noting courts should only turn to purpose provisions "when the text is otherwise ambiguous").

To be clear, courts may consider prefatory material, such as the findings in a statute, as a "permissible indicator" of a statute's meaning. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 34, at 217 (2012). Courts must be mindful, however, that prefatory material "does not limit or expand the scope of the operative clause" of a statute. *See United States v. Bryant*, 996 F.3d 1243, 1260 (11th Cir. 2021) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 578 (2008)). And "an expression of specific purpose in the prologue [of a statute] will not limit a more general disposition that the operative text contains" because "legislative remedies often go beyond the specific ill that prompted the statute." SCALIA & GARNER, *supra*, at 219. So, assuming the findings are inconsistent with the unambiguous text of the Act's operative provisions, it is the operative text of § 6082, not the findings, which control.

But the findings are not inconsistent with the text of § 6082. In its findings, Congress clearly stated that "United States nationals who were the victims of these confiscations should be

endowed with a judicial remedy in the courts of the United States that would deny traffickers any profits from economically exploiting Castro's wrongful seizures."   22 U.S.C. § 6081(11). Plaintiffs who only became United States citizens after their property was seized are clearly still "United States nationals who were the victims of . . . Castro's wrongful seizures." *Id.* The Court declines Defendants' invitation to read these nationals out of the plain language of the statute—as even the findings reference them. *See also id.* § 6081(3)(B)(iii) (recognizing the existence of "Cubans who claimed asylum in the United States as refugees because of persecution and later became naturalized citizens of the United States"). Accordingly, while the Court need not consider the findings, having "return[ed] to the prefatory" provisions of the statute, the Court is assured that its "reading of the operative clause is consistent with the announced purpose" of the Helms-Burton Act.[5] *Heller*, 554 U.S at 578.

The Court's conclusion as to the text of the statute is further bolstered by the principle that courts must interpret related statutes in harmony with each other. *See* SCALIA & GARNER, *supra*, § 39, at 252. The International Claims Settlement Act of 1949 ("ICSA"), as amended, allows a district court adjudicating a § 6082 claim to refer questions regarding the "amount and ownership of a claim by a United States national . . . *whether or not the United States national qualified as a national of the United States (as defined in section 1643a(1) of this title) at the time of the action by the Government of Cuba*." 22 U.S.C. 1643*l* (emphasis added); *see also Garcia-Bengochea v.*

---

[5]  For similar reasons, the Court is not persuaded by the Eleventh Circuit's statement in *Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251 (11th Cir. 2006), where it questioned, in a footnote, whether property "owned by Cuban nationals at the time of its expropriation" is "the proper subject of a trafficking claim under" the Helms-Burton Act. *Id.* at 1255 n.3. "Statements in an opinion that are not 'fitted to the facts,' or that extend 'further than the facts of that case,' or that are 'not necessary to the decision of an appeal given the facts and circumstances of the case,' are dicta." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 762 (11th Cir. 2010) (citations omitted). "And dicta is not binding on anyone for any purpose." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010). *Glen* only cited the findings within the Helms-Burton Act, did not decide the issue, and did not involve a trafficking claim. *Glen*, 450 F.3d at 1255 n.3. The Report is therefore correct that this is nonbinding dicta. Report at 22–23.

*Carnival Corp.*, 407 F. Supp. 3d 1281, 1290 (S.D. Fla. 2019) (looking to the ICSA when interpreting the Helms-Burton Act). Clearly, this language contemplates that those who were not United States nationals at the time their property was taken could later become citizens of the United States and bring a claim under the Helms-Burton Act. Defendants resist this conclusion by arguing this provision merely reconciles the fact that the Helms-Burton Act and ICSA differ on which legal entities qualify as United States nationals. MTD Reply at 4–5; *compare,* 22 U.S.C. § 1643a(1), *with id.* § 6023(15)(B).

While this language might reconcile those provisions, nothing in the statute indicates this is its only function. It also addresses a significant limitation on § 1643b(a) claims for property loss, which can only be brought against Cuba if "the property on which the claim was based was owned . . . *by a national of the United States on the date of the loss*." *Id.* § 1643c(a) (emphasis added). Section 1643*l*, then, clarifies that regardless of this limitation on § 1643b(a) claims, a district court can still certify questions regarding a § 6082 claim's amount and ownership when the property was not owned by a United States national at the time it was confiscated.

Finally, Defendants argue that, assuming shareholders can bring claims under the Act, Plaintiffs are still precluded from maintaining their claims because the Blanco Rosell Siblings held interests in Cuban corporations. MTD at 10. As the argument goes, a plaintiff who held property through Cuban entities should not be able to sue under the Act because the entity itself would not be able to bring a trafficking claim. *Id.* Defendants rely on the general legal principle that "[a] shareholder's rights are derived from and are not greater than the rights of the entities from which those rights derive." *Id.* But as discussed below, shareholder-plaintiffs are suing on the basis of their own claims to confiscated property—not claims held by the entities which directly owned the

property.  Defendants' reliance on this hornbook law is therefore misplaced.[6]  The Court adopts

the Report's recommendation to deny the Motion to Dismiss on this ground.

### c.  Whether Shareholders May Maintain a Claim

Defendants' next argument is that a United States national who only had an indirect—or

shareholder—interest in confiscated property by way of an entity that directly owned the property

cannot state a § 6082 claim.  MTD at 10–14.  This would preclude all claims brought in this action,

because the Blanco Rosell Siblings owned all of the relevant property through entities that were

confiscated by the Cuban government.  Am. Compl. ¶¶ 84–88, 92–93.  Seemingly every court to

address this issue has rejected this interpretation, and the Court joins them.

After the Cuban government confiscated a person's property, the person's "ownership

rights" were "extinguish[ed]."  *See Glen*, 450 F.3d at 1255.  The person then gained a "claim to

such property."  *Id.* (quoting 22 U.S. § 6082(a)(1)(A)).  The Helms-Burton Act in turn allows those

who "own[] the claim to such [confiscated] property" to sue those who traffic in the property.  22

U.S. § 6082(a)(1)(A).  Defendants effectively argue that only those who directly owned the

property at the time it was confiscated gained a "claim to" the property.  *See* MTD at 10–14.

Shareholders were left with nothing.  *Id.*

There is nothing in the text of the statute, however, that provides this limitation.  Because

the statute does not define the terms "claim" and "claim to," the Court must ascertain their ordinary

meanings by "look[ing] to dictionary definitions for guidance."  *In re Walter Energy, Inc.*, 911

F.3d 1121, 1143 (11th Cir. 2018).  The plain meaning of the word "claim" is broad enough to

encompass more than direct ownership.  *See Garcia-Bengochea*, 407 F. Supp. 3d at 1289.  The

dictionary definitions of claim include, for example, "a demand for something rightfully or

---

[6]  This argument also seems unrelated to the fact the Blanco Rosell Siblings were not United States nationals when their property was confiscated, because it would equally preclude claims brought by a person who *was* a United States national at the time of confiscation but who owned the property through a Cuban entity.

allegedly due" and "a right to something." *Id.* (citing WEBSTER'S NEW WORLD COLLEGE DICTIONARY, at 257 (3d ed. 1996) and MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, at 210 (10th ed. 1993)). The text of the statute places no limitation on the broad word "claim." Accordingly, like those who owned property directly, a shareholder gained a "claim to" confiscated property once the shareholder's previous ownership rights were extinguished. *See Glen*, 450 F.3d at 1255.

Other considerations make clear this is the correct interpretation of the statute. Looking again to the ICSA, a "claim" for property loss against the Cuban government may be brought based on property a person "owned wholly or partially, directly or indirectly." 22 U.S.C. § 1643c(a). The fact shareholders may bring ICSA claims strongly supports they may also bring Helms-Burton Act claims. *See* SCALIA & GARNER, *supra*, at 252. But Defendants try to juxtapose this provision of the ICSA with § 6082 and argue that because the ICSA explicitly references indirect ownership, the Helms-Burton Act must only allow claims based on direct ownership. MTD at 11. Defendants have it backwards. Where a statute is silent on an issue, courts must "construe [the statute's] silence as exactly that: silence." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015). The Helms-Burton Act is silent on whether a plaintiff must directly or indirectly own the property, and the Court will not interpret this silence as eliminating an entire class of claims simply because Congress chose slightly different wording in the ICSA. Instead, the ICSA merely confirms that, as the text of the Helms-Burton Act already makes clear, direct ownership is not required.

The Court also agrees with the *Garcia-Bengochea* court's observation that Defendants' interpretation of the statute "would substantially undermine Congress's goal of deterring trafficking" because it would completely shield defendants who traffic in property that was held by Cuban entities from liability. *Garcia-Bengochea*, 407 F. Supp. 3d at 1290. Most critically,

Defendants fail to explain how nationals who owned property through Cuban corporations would ever be able to avail themselves of the Act's remedies.  If the Cuban government also nationalized the corporations—which Plaintiffs allege happened here—"there is a strong possibility that many of these corporations no longer exist or are otherwise unable to assert claims on their own behalf." *Id.*  Absent any evidence to the contrary in the text of the statute, the Court will not assume Congress intended to deviate from the ordinary meaning of the words it used and limit the scope of § 6082.

The Court is also unpersuaded by the arguments Defendants advance in their attempt to escape this conclusion.  First, Defendants cite to *Dole Food Company v. Patrickson*, 538 U.S. 468 (2003), arguing that "[t]he Supreme Court requires courts interpreting statutes to presume Congress's knowledge and strict application of the corporate form unless there is" reason to believe Congress intended to depart from generally applicable rules on corporate formalities. MTD at 11.  *Dole* does not stand for that proposition.  In *Dole*, the Supreme Court held "[a] corporation is an instrumentality of a foreign state under the [Foreign Sovereign Immunities Act ("FSIA")] only if the foreign state itself owns a majority of the corporation's shares." 538 U.S. at 477.  As a result, corporations that are only indirectly owned by a foreign state do not qualify as an instrumentality of that state for purposes of the FSIA.

But this conclusion relied on the text of the FSIA, which made clear that Congress enacted the statute with corporate law principles in mind.  *See id.* at 474 ("In issues of corporate law structure often matters.  It is evident from the Act's text that Congress was aware of settled principles of corporate law and legislated within that context.").  It was "evident" Congress legislated with an eye to the corporate form because the FSIA uses terms like "shares" and "separate legal person, corporate or otherwise." *Id.* (quoting 28 U.S.C. §§ 1603(b)(1)–(2)).  In contrast, here "Congress used the broadly understood term 'claim,' combined [w]ith colloquial

language such as the 'rightful owners' and 'victims of these confiscations' in the congressional findings," indicating it did not intend for general corporate legal principles to cabin the Helms-Burton Act.  *See Garcia-Bengochea*, 407 F. Supp. 3d at 1289.

Defendants next point to a stray provision in Title II of the Act, which governs sanctions against the Cuban government.  MTD at 12.  This provision requires the President to consider whether a government in Cuba has committed to return confiscated property (or compensation for it) "to United States citizens *(and entities which are 50 percent or more beneficially owned by United States citizens)*" when determining if a "transition government in Cuba is in power."  22 U.S.C. § 6065(b)(2)(D) (emphasis added).  By focusing on the emphasized language, Defendants mistakenly argue Title II provides the only remedy available to shareholders.  But the same provision also references United States citizens, a group that is endowed with a civil remedy under Title III, so it is clearly not meant to limit the remedies offered by § 6082.  *Id.*  This provision simply outlines a factor the President must consider when determining whether the appropriate conditions for lifting the embargo have been met.  It does no more than that.

Having thoroughly examined the plain text of the statute and additional evidence of the statute's meaning, the Court must reject Defendants' interpretation.  In line with every court to have addressed this issue, the Court holds that those who indirectly owned property may maintain a trafficking claim under § 6082.  *See, e.g.*, *Central Santa Lucia*, No. 22-cv-00367-CFC, ECF No. 34, at 3 ("[N]othing in the text of the statute requires that a plaintiff in a § 6082(a)(1) action have a direct ownership interest in the confiscated property."); *Garcia-Bengochea*, 407 F. Supp. 3d at 1289–90.[7]  Accordingly, the Court agrees with the Report's recommendation to deny the Motion on this ground.

---

[7]  Some courts have implied § 6082 plaintiffs still own the confiscated property and that requiring direct ownership would delete the phrase "the claim to such" from the statute.  *See Seaboard Marine*, 2022 WL 3577078, at *6.  But a proper § 6082 plaintiff does not own confiscated property—the plaintiff now owns

### d. *Whether a Plaintiff Must Allege the Confiscation was "Wrongful"*

Defendants' final statutory interpretation argument is their least well taken: that plaintiffs must plead their property was "wrongfully confiscated." MTD at 14–16. Defendants appear to argue that when a state confiscates property within its borders it is only "wrongfully confiscated" when such action violates international law. *See id.*

As the Report correctly states, this is not required by the Helms-Burton Act. The text of § 6082 only requires the property to have been "confiscated by the Cuban Government on or after January 1, 1959." 22 U.S.C. § 6082(a)(1)(A). Nothing in the statute's definition of "[c]onfiscated" states that the taking must have violated international law. *Id.* § 6023(4). The Court must accept this silence, "take the provision as Congress wrote it, and neither add words to nor subtract them from it." *United States v. Garcon*, 54 F.4th 1274, 1280 (11th Cir. 2022) (quoting *Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1296 (11th Cir. 1999)). Requiring a confiscation to violate international law would rewrite the statute's language, which the Court will not do.

While the Court finds no reason to resort to the legislative findings in light of the statute's plain text, it notes they are not to the contrary. Defendants make much of the fact these findings repeatedly use the term "wrongful" when referring to the confiscations. *See, e.g.*, 22 U.S.C. § 6081(2) (referring to "[t]he wrongful confiscation or taking of property belonging to United States nationals by the Cuban Government"); *id.* § 6081(6)(B) (referring to "property wrongfully confiscated by the Cuban Government"). Defendants do not justify, however, why these references require a violation of international law. Indeed, neither the plain text of the operative

---

the claim to the property that replaced the previous ownership interest. *See Glen*, 450 F.3d at 1255. Nevertheless, nothing in the text indicates only those who directly owned property received claims to the property, and the conclusion is therefore the same.

provision nor the findings reference violations of international law at all.[8]   Congress made it unlawful to traffic in property which was confiscated by the Cuban government on or after January 1, 1959 and specifically defined what constitutes confiscated property.   This might have captured the universe of confiscations Congress found "wrongful."   Or, Congress may have simply provided a legislative remedy that went "beyond the specific ill that prompted the statute."   SCALIA & GARNER, *supra*, at 219.   Those are its decisions to make.   No matter which (if either) is the case, there is no occasion to "limit . . . the scope of the operative clause" in light of these findings, *Bryant*, 996 F.3d at 1260 (quoting *Heller*, 554 U.S. at 578), because "the operative clause is consistent" with them.   *See Heller*, 554 U.S. at 578.

Defendants' invocation of the domestic takings rule is unpersuasive, and in fact, demonstrates why the Helms-Burton Act does not require a violation of international law.   The domestic takings rule is a principle of international law that provides "what a country does to property belonging to its own citizens within its own borders is not the subject of international law." *Federal Republic of Germany v. Philipp*, 141 S. Ct. 703, 709 (2021).   Other statutes, such as the FSIA, require a violation of international law in certain circumstances.   28 U.S.C. § 1605(a)(3) (referencing "property taken in violation of international law").   Therefore, courts must look to the domestic takings rule in those instances because if the rule applies there is no violation of international law.   If Congress meant for this limitation to apply to § 6082 claims, it clearly knew how to say so.   *Id.*   But taking the statute as Congress wrote it, there is clearly no requirement that a confiscation be in violation of international law and so the domestic takings rule has no application here.   *Sucesores de Don Carlos Nuñez y Doña Pura Galvez, Inc. v. Société*

---

[8]   The only reference to international law in 22 U.S.C. § 6081 instead states that "[i]nternational law recognizes that a nation has the ability to provide for rules of law with respect to conduct outside its territory that has or is intended to have substantial effect within its territory," seemingly justifying Congress's authority to pass the Helms-Burton Act.   *Id.* § 6081(9).

*Générale, S.A.*, 577 F. Supp. 3d 295, 308 (S.D.N.Y. 2021) (holding that international law is inapplicable to the Helms-Burton Act and the "contention that international law affirmatively legitimates domestic takings thus has no basis in law").

Defendants end their argument by challenging Plaintiffs' allegations regarding the seizures of the Blanco Rosell Siblings' property and the Cuban government's purported justification for it. MTD at 15–16. These remaining arguments clearly present factual issues the Court cannot resolve on a motion to dismiss.[9] Accordingly, the Motion to Dismiss is denied as to this ground.

### e. Collateral Estoppel of 70-Year Concession and Motion to Stay

Finally, the Court addresses Defendants' collateral estoppel argument as to the 70-Year Concession referenced in the Amended Complaint. Plaintiffs have previously litigated the geographic scope of the 70-Year Concession, and the *Seaboard Marine* court found the scope of the 70-Year Concession was narrower than Plaintiffs allege. *Seaboard Marine*, 2022 WL 3577078, at *12. Therefore, Defendants seek to preclude Plaintiffs from relitigating that issue here and request the Court dismiss the claims based on it. Plaintiffs subsequently filed their Motion to Stay, asking the Court to defer ruling on this issue until the *Seaboard Marine* court adjudicated the Agreed Motion to Vacate filed in *Seaboard Marine*. While the Report recommended denying the Motion to Stay on the merits, the *Seaboard Marine* court has now denied the Agreed Motion to Vacate. Accordingly, the Court must instead deny the Motion to Stay as moot.[10]

---

[9] Defendants slightly retool their argument in their Objections, stating Plaintiffs "fail[] to plead facts plausibly showing 'adequate and effective compensation' was due for such a confiscation." Defs.' Objs. at 16–17. First, the Court does not need to entertain this new argument. *Williams*, 557 F.3d at 1292. Second, Plaintiffs clearly plead the Blanco Rosell Siblings owned the property and it was taken from them without any compensation being paid to the Blanco Rosell Siblings. Am. Compl. ¶¶ 2, 94–95, 102. That is all that is required.

[10] The Court does express doubts about the Report's conclusion that a vacated judgment continues to have preclusive effect in these circumstances. *See United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002). But ultimately, the Court need not reach this issue or adopt the related reasoning in the Report given that the issue is now moot.

Plaintiffs try to prevent the application of collateral estoppel on several grounds: (1) that because collateral estoppel would not dismiss an entire claim it is inappropriate to raise in a motion filed pursuant to Rule 12(b)(6); (2) that collateral estoppel is not "apparent on the face of the Amended Complaint"; (3) that this issue should not be decided until the *Seaboard Marine* appeal is resolved; and (4) that the relevant findings of the *Seaboard Marine* court are conclusions of law not entitled to preclusive effect.  MTD Resp. at 15–18.  The Report recommends that the Court reject all of these arguments.  Report at 35–41.

Plaintiffs' only objection argues the Court should not apply collateral estoppel to the issue of the 70-Year Concession because the *Seaboard Marine* court decided the issue based on the "plain text" of the 70-Year Concession, *Seaboard Marine*, 2022 WL 3577078, at *12, and the issue was "not heavily litigated and was not the subject of significant briefing."  Pls.' Objs. at 13 (emphasis omitted).  The law, however, does not require that an issue be "heavily litigated"—only that it was "actually litigated."  *CSX Transp., Inc. v. Brotherhood of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003).  This issue was obviously actually litigated in *Seaboard Marine*, and therefore that requirement is met.  *See Seaboard Marine*, 2022 WL 3577078, at *9–12 (deciding the same issue).  And while the *Seaboard Marine* court ultimately decided this issue based on the "plain text" of the 70-Year Concession, *id.* at *12, the Court agrees with the Report that a review of the *Seaboard Marine* record reflects this issue was indeed extensively litigated by the *Seaboard Marine* parties prior to that determination.  Having disposed of this single objection, the Court reviews the rest of the Report regarding the applicability of collateral estoppel for clear error.  There is none.  The Court agrees Plaintiffs cannot relitigate their claims related to the 70-Year Concession.

**<u>CONCLUSION</u>**

In sum, the Court, having conducted a *de novo* review of the Report's findings identified in Defendants' Objections and Plaintiffs' Objections, and having reviewed all other sections of the Report for clear error, it is hereby

**ORDERED AND ADJUDGED** that the Report, [ECF No. 138], is **AFFIRMED AND ADOPTED** as follows:

1.      Defendants' Motion to Dismiss, [ECF No. 72], is **GRANTED IN PART AND DENIED IN PART**.

2.      Plaintiffs' Motion to Stay, [ECF No. 119], is **DENIED AS MOOT**.

3.      All claims other than those asserted by Plaintiff Odette Blanco de Fernandez *née* Blanco Rosell are **DISMISSED** *with prejudice*.

4.      Any claims asserted by Plaintiff Odette Blanco de Fernandez *née* Blanco Rosell based upon the 70-Year Concession referenced in the Amended Complaint are **DISMISSED** *with prejudice*.

5.      Defendants shall file an Answer to the Amended Complaint that addresses any remaining claims within **fourteen (14) days** of the date of this Order.

**DONE AND ORDERED** in Miami, Florida, this 20th day of July, 2023.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**