UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:21-CV-22778-DAMIAN/AUGUSTIN-BIRCH

**ODETTE BLANCO DE FERNANDEZ,**

    **Plaintiff,**

v.

**CMA CGM S.A.,** *et al.***,**

    **Defendants.**
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO COMPEL DISCOVERY FROM PLAINTIFF [DE 260]**

This cause comes before the Court on Defendants CMA CGM S.A. and CMA CGM (America) LLC's Motion to Compel Discovery from Plaintiff. DE 260. Plaintiff Odette Blanco De Fernandez responded to the Motion to Compel, and Defendants replied. DE 261; DE 263.

The Court has scheduled a Discovery Hearing on the Motion to Compel for August 26, 2024, at 10:00 a.m. DE 259. However, upon review of the briefing, the Court concludes that it can resolve the Motion to Compel without the Discovery Hearing. The Court has carefully considered the briefing and the record and is otherwise fully advised in the premises. For the reasons set forth below, the Motion to Compel is **GRANTED IN PART AND DENIED IN PART**. The Discovery Hearing scheduled for August 26, 2024, at 10:00 a.m. is **CANCELED**.

Plaintiff's Second Amended Complaint raises one count under Title III of the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996, also known as the Helms-Burton Act. DE 160 at 50. The Court summarized the relevant provisions of the Helms-Burton Act and Plaintiff's allegations in a prior Order entered on May 24, 2024, at docket entry 230. In the Motion

to Compel that is now before the Court, Defendants ask the Court to overrule Plaintiff's objections and compel her to respond to Interrogatory #'s 7–10 of the Third Set of Interrogatories. The Court will address each of the four Interrogatories in turn.

### A. Interrogatory # 7

Interrogatory # 7 reads as follows:

> **INTERROGATORY NO. 7**
>
> Identify every Person on the privilege log served by Plaintiff's counsel on Defendants on June 24, 2024 (attached as Exhibit A to these Interrogatories), by each Person's relationship (such as son, daughter, son-in-law, cousin, agent, etc.) to each of the Blanco Rosell Siblings, describe any legal or beneficial interest such Person asserts in each allegedly Confiscated Property, and Identify any documents that support such Person's assertion of that interest (including by Bates Number, when available).[1]

DE 260-1 at 9–10. Footnote 1 to the Interrogatory permits Plaintiff to exclude from her response 22 individuals named in the privilege log. *Id.* at 10. Exhibit A to the Interrogatory is a 27-page privilege log of Emma, Eduardo, and Liana Blanco, who are Plaintiff's relatives. *Id.* at 14–40.

Plaintiff objects that Interrogatory # 7 is an impermissible attempt to seek non-party discovery and states that she "was not involved in the preparation of the non-party privilege log and has no personal knowledge of that log." DE 260-2 at 4. She further objects that responding to the Interrogatory poses an undue burden that is disproportionate to the needs of this case. *Id.*

The Court does not see the fact that Interrogatory # 7 refers Plaintiff to a document she did not create as meaningful. The Interrogatory seeks no different information than if Defendants were to create a separate list of all of the individuals named on the privilege log and then asked Plaintiff to provide the same information requested in the Interrogatory for each individual on that list. Regardless of how the list of individuals is presented to her, she must respond with the

information known or available to her or under her control. *See Ecometry Corp. v. Profit Ctr. Software, Inc.*, No. 06-80083-Civ, 2007 WL 9706934, at *6 (S.D. Fla. Mar. 15, 2007) ("Parties responding to interrogatories cannot limit their answers to information within their own knowledge and ignore information that is immediately available to him or under his control.").

As for Plaintiff's burdensomeness and proportionality objections, Interrogatory # 7 asks about a key issue in this case: interest in the property that Plaintiff contends Defendants have trafficked and for which she seeks compensation. Furthermore, except for the 22 individuals that Defendants permit Plaintiff to exclude from her response, many of the individuals listed on the privilege log are Plaintiff's relatives. And while the privilege log is 27 pages, most of the same individuals are listed repeatedly. The Court concludes that it is not unduly burdensome or disproportionate to require Plaintiff to provide the information requested in Interrogatory # 7. Plaintiff's objections to the Interrogatory are overruled, and she must respond.

B. **Interrogatory # 8**

Interrogatory # 8 reads as follows:

> **INTERROGATORY NO. 8**
>
> Identify every natural Person consulted with, interviewed, or who otherwise has assisted Plaintiff, including through one of Plaintiff's family, agents, or attorneys, who gathered, provided, shared, or obtained information relating to the allegedly Confiscated Property or the alleged trafficking activity of any ocean carrier at the Bay of Mariel Cuba, and describe the information gathered, provided, shared or obtained by that Person.

DE 260-1 at 10. Plaintiff objects that the Interrogatory poses an undue burden that is disproportionate to the needs of this case. DE 260-2 at 5. She further objects that, "[t]o the extent this Interrogatory seeks identities of Plaintiff's counsel, her agent, and her family members, that

3

information has already been produced to Defendants in discovery in this case" and, "[t]o the extent that this Interrogatory seeks additional information," that additional information is privileged. *Id.*

Interrogatory # 8 requests a potentially vast amount of information by seeking identification of every person "who gathered, provided, shared, or obtained information relating to the allegedly Confiscated Property or the alleged trafficking activity of any ocean carrier at the Bay of Mariel Cuba" and seeking a description of that information. Notably, the Interrogatory contains no temporal limitation. Plaintiff alleges in the Second Amended Complaint that her family had an interest in the property at issue in this litigation at least as of the 1950's. DE 160 ¶¶ 68, 70. A complete and truthful response to the Interrogatory could require Plaintiff to describe communications going back decades in the past.

The Court views as reasonable Plaintiff's proposal that Interrogatory # 8 be narrowed to require her to identify relevant family members, agents, and attorneys. If these individuals were previously identified to Defendants, Plaintiff's response should cite to the discovery response(s) or Bates numbered document(s) where the identifications are made. If Defendants wish to ask about additional individuals during depositions, they may do so.

Even with the list of relevant individuals narrowed, Interrogatory # 8's request for a description of the information gathered, provided, shared, or obtained is unduly burdensome. The Interrogatory could require Plaintiff to describe hundreds of communications going back decades in the past. Thus, the Court will not require Plaintiff to "describe the information gathered, provided, shared or obtained." If Defendants wish to ask about this information during depositions, they may do so.

4

Plaintiff's objections to Interrogatory # 8 are sustained in part and overruled in part. She must respond by identifying relevant family members, agents, and attorneys or by citing to the discovery response(s) or Bates numbered document(s) where the identifications are made.

C. Interrogatory # 9

Interrogatory # 9 reads as follows:

> **INTERROGATORY NO. 9**
>
> Identify the revenues, expenses, profits, assets, any valuation, and business services or products that generated any such monies, derived from or attributed to each of the Confiscated Properties, including Compañia Azucarera Mariel S.A., Maritima Mariel S.A., Agricola Pinillos S.A., Corporacion Lynx, S. A. (in Spanish; also known as Lynx Corporation in English), Crux Investment Corporation, Inc., and Finca Tapia, on an annual basis for the five years prior to and including the year 1960.

DE 260-1 at 10. Plaintiff objects that this Interrogatory "seeks irrelevant information that is disproportionate to the needs of this case" because "[t]he revenues, expenses, and profits attributable to the entities referenced herein are not an element of Plaintiff's claim, nor is Plaintiff required to prove them in order to prevail at trial." DE 260-2 at 5. She also contends that she "does not have copies of financial statements for these entities" because the Cuban government "cut off" her family's access to the entities and to corporate records between 1959 and 1960. *Id.* at 5–6. She maintains that Cuban law "make[s] it a criminal offense for [her] to seek this information in Cuba." *Id.* at 6.

The Helms-Burton Act permits damages for property trafficking to be based on "the fair market value of [the trafficked] property, calculated as being either the current value of the property, or the value of the property when confiscated plus interest, whichever is greater." 22 U.S.C. § 6082(a)(1)(A)(i)(III). To the Court's knowledge, and to Defendants' knowledge as

5

well, *see* DE 263 at 3, Plaintiff has not stipulated that damages in this case will not be based on the value of the property at issue when it was confiscated plus interest. And using that measurement of damages, the information sought through Interrogatory # 9—financial information about the property for the five years prior to and including the year of confiscation—is relevant and proportional to the needs of this case. Plaintiff's objections are overruled, and she must respond with the information known or available to her or under her control. *See Ecometry Corp.*, 2007 WL 9706934, at *6.

Defendants maintain that, if the requested information is not known or available to Plaintiff or under her control, she should be required to "detail the efforts she made to obtain the information." DE 260 at 4 (alteration and quotation marks omitted). Some courts have required parties who contend they lack information with which to answer interrogatories to explain the efforts they took to obtain the information. *E.g., Steinberg v. Lauer*, No. 05-60584, 2012 WL 12950045, at *1 (S.D. Fla. Aug. 13, 2012) ("If the answering party lacks necessary information to make a full, fair and specific answer to an interrogatory, the answering party should set forth in detail the efforts made to obtain the information." (quotation marks omitted)); *Demaria v. Gisbex Clearing Corp.*, No. 10-20426-CIV, 2012 WL 13008158, at *1 (S.D. Fla. Mar. 12, 2012) ("If, however, Defendant lacks the necessary information to make a full, fair and specific answer to any of the interrogatories, she should so state under oath and should also set forth in detail the efforts made to obtain the information." (alterations and quotation marks omitted)). However, Federal Rule of Civil Procedure 33, which governs interrogatories, does not require a responding party to make such an explanation.[1] Under the circumstances of this case, the Court will not require

---

[1] Based on the Court's research, courts in this District that have stated that a responding party should detail its efforts to obtain information have primarily cited to a 2005 Middle District of Florida case for that proposition. The Middle District of Florida case cited to a 1991 District of Kansas case, which cited to a 1977 Western District of Oklahoma

Plaintiff to detail the efforts she made to obtain responsive information. It is sufficient for Plaintiff to verify under oath that requested information is not known or available to her or under her control due to actions and laws of the Cuban government. *See* Fed. R. Civ. P. 33(b)(3), (5) (requiring a responding party to sign interrogatory responses under oath). Plaintiff's objections to Interrogatory # 9 are overruled, and she must respond to the extent she is able.

### D. Interrogatory # 10

Finally, Interrogatory # 10 reads as follows:

> **INTERROGATORY NO. 10**
>
> Identify all evidence (including each document by Bates Number and any living Person) that supports each fact stated in Plaintiff's Response to Interrogatory No. 8 contained in Exhibit 7 to the September 12, 2023 deposition of Odette Blanco de Fernandez[2] (attached as Exhibit B to these Interrogatories), including but not limited to the geographic location and scope of each property, the dates of each purchase or transfer described, and each Person (including entities) that had direct or indirect interest in or beneficial ownership of each property.

DE 260-1 at 10–11. The Interrogatory refers to an exhibit admitted during Plaintiff's deposition, with the exhibit being her interrogatory responses in another lawsuit that she filed in the Southern District of Florida against shipping companies for trafficking her property. *Id.* at 42–66; *see De Fernandez v. Crowley Mar. Corp.*, 1:21-cv-20443 (S.D. Fla.). Interrogatory # 8 in that lawsuit and Plaintiff's response read as follows:

---

case, which cited to a 1957 Southern District of New York case, which cited to a 1950 federal practice manual. This research does not convince the Court that a responding party is required to detail its efforts to obtain information. Further, although the Court regularly resolves discovery disputes, to the Court's recollection this is the first time that it has been asked to require a party to detail efforts to obtain discovery information.

**INTERROGATORY NO. 8**:

Identify and describe in detail the legal and factual bases for Your contention that You owned the Confiscated Property and Concession rights, including:
   a. Identifying the geographic scope of the real property You owned;
   b. When You came to own each property that comprises the Confiscated Property;
   c. How You came to own each property that comprises the Confiscated Property; and
   d. What documents support Your claim of ownership to each property that comprises the Confiscated Property, including but not limited to any title records or tax payments.

**RESPONSE**:

Plaintiff objects to this Interrogatory No. 8 because the Interrogatory's subparts introduce separate lines of inquiry distinct from the main Interrogatory and therefore Plaintiff treats them as separate interrogatories. The number of interrogatories and all subparts introducing separate lines of inquiry now exceeds the 25-interrogatory limit. Plaintiff has no obligation to answer any further interrogatories but, in the interest of judicial economy and efficiency, Plaintiff voluntarily agrees to answer this Interrogatory without waiving her right to object to any further interrogatories. Plaintiff responds as follows:

(a) Plaintiff owns the Concession because the Cuban Government issued the Concession to Maritima Mariel (which was jointly owned by the Blanco Rosell Siblings) to plan, study, execute, maintain and exploit public piers and warehouses in the Bay of Mariel. The geographic scope of the Concession is the entirety of the Bay of Mariel. In addition to the Concession, the Blanco Rosell Siblings jointly owned the sugar mill known as the "Central San Ramon," which they purchased in 1949 from the Balsinde family along with approximately 11,000 acres of land southeast, south, and west of Mariel Bay. The

Blanco Rosell Siblings never sold any of the land purchased from the Balsinde family, and they added additional property to their holdings. Their real property that was part of the Confiscated Property extended south from their docks and warehouses in the town of Mariel to below the Central San Ramon refinery, then west approximately to the town of Quiebra Hacha (with the exception of the 970 acres of Finca Mariel), then north towards Vista del Mar to a point at approximately 23 degrees, 00 minutes, 50 seconds north, and then east to the bay of Mariel, where the family's summer home Tapia was located, and onto the Angosta peninsula up to the boundaries of the former Mariel Naval Air Station. This property comprised the lands of the farms known as Regalado (AKA San Pablo AKA Tomasita), Santiago de Canas (AKA San Ramon), San Juan Bautista, Balbanera, Cantos, el Jobo, Rio Hondo, La Sierra, Menocal, San Jose, Angosta, Tapia, Pinillos, and Tinaja. The former Pinillos and Angosta farms, of approximately 4400 acres, were held by the Blanco Rosell Siblings under Compania Agricola Pinillos S.A., a Cuban corporation which they owned in equal shares, and which was confirmed as belonging to the five siblings and then confiscated from them by the Government of Cuba in Decree 436.

(b)   Plaintiff and her family purchased the Balsinde properties in 1949, and subsequently purchased Tapia and other property.

(c)   The Balsinde family properties were purchased by the Blanco Rosell Siblings' father, Alfredo Blanco Calas, who made the properties assets of Azucarera Mariel SA, and he later gave all his shares of Azucarera Mariel SA to the Blanco Rosell Siblings. The Tapia property was purchased by Plaintiff's husband Johnny Fernandez, and later sold to Alfredo Blanco Calas, who, in turn, gave the Tapia property to the Blanco Rosell Siblings.

(d)     Pursuant to Fed. R. Civ. P. 33(d), Plaintiff will produce documents that support Plaintiff's claim of ownership to the property that comprises the Confiscated Property.

DE 260-1 at 55–57. Plaintiff objects that Interrogatory # 10 seeks irrelevant information about her claim in separate litigation, is an unduly burdensome and disproportionate catch-all interrogatory that requires her to summarize all evidence of her claim, and is premature because discovery is ongoing. DE 260-2 at 6–7.

Plaintiff's objection that the Interrogatory seeks irrelevant information about her claim in separate litigation is without merit. The property that is at issue in the *Crowley* litigation and that Plaintiff discussed in her Interrogatory # 8 for that litigation is the same property that is at issue in this case. *See, e.g.*, DE 160 ¶¶ 68–79 (Second Amended Complaint describing the property at issue). Plaintiff's objection that Interrogatory # 10 is premature is also without merit. The current deadline to complete fact discovery is October 11, 2024, less than two months from now, *see* DE 247 at 2, and this case has been pending for over three years. If Plaintiff gathers additional evidence to support her case as discovery proceeds, she should supplement her discovery responses in accordance with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(e)(1) (providing requirements for supplementing discovery responses).

As for Plaintiff's burdensomeness and proportionality objections, Interrogatory # 8 in the *Crowley* litigation and Interrogatory # 10 in this case ask about key issues in this case: how Plaintiff's family has an interest in the property at issue and the geographic scope of that property. Interrogatory # 10 asks Plaintiff to identify the evidence supporting only 10 sentences of factual assertions, and some of those sentences are duplicative. It is not unduly burdensome or disproportionate to require Plaintiff to respond. If Plaintiff has already disclosed the requested

10

evidence, her response should cite to the discovery response(s) or Bates numbered document(s) where that disclosure is made. Plaintiff's objections to Interrogatory # 10 are overruled, and she must respond.

For the foregoing reasons, Defendants' Motion to Compel Discovery from Plaintiff [DE 260] is **GRANTED IN PART AND DENIED IN PART**. Unless otherwise agreed among the parties, Plaintiff must amend her responses to Interrogatory #'s 7–10 of the Third Set of Interrogatories as required in this Order within 14 days of the date of this Order. The Discovery Hearing scheduled for August 26, 2024, at 10:00 a.m. is **CANCELED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 23rd day of August, 2024.

PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE