UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-22778-CIV-DAMIAN/Augustin-Birch

ODETTE BLANCO DE FERNANDEZ
*née* BLANCO ROSELL,

      Plaintiff,

v.

CMA CGM S.A. (a/k/a CMA CGM
THE FRENCH LINE, a/k/a CMA CGM
GROUP) and CMA CGM (AMERICA) LLC,

      Defendants.

_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 378] ON
DEFENDANTS' MOTION TO EXCLUDE EXPERT OPINIONS [ECF NOS. 284, 300-1]**

**THIS CAUSE** came before the Court upon consideration of the Report and

Recommendation on Defendants' *Daubert* Motion to Exclude Opinions of Giles Tremlett,

Scott Edmonds, Peter Ford, and Timothy Riddiough [ECF Nos. 284, 300-1 ("Motion")],

entered on October 1, 2025. [ECF No. 378 (the "Report")].

THE COURT has considered the Report, the underlying Motion and related briefing

and submissions, the parties' Objections to the Report [ECF Nos. 389, 391, 425, 426], and

the pertinent portions of the record and is otherwise fully advised.

## I.   RELEVANT BACKGROUND

This Court has laid out the background and history of this case in several previous

Orders (*see, e.g.*, ECF Nos. 138, 151), and, therefore, need not set it out again here. Relevant

here, Plaintiff disclosed four expert witnesses: Giles Tremlett (a historian), Scott Edmonds

(a cartographer), Peter Ford (a maritime shipping expert), and Timothy Riddiough (a real

estate valuation expert) (collectively, the "Experts"). *See* ECF Nos. 291, 299. Defendants

moved to strike opinions of these Experts. *See* Motion. The undersigned referred the Motion

to United States Magistrate Judge Panayotta Augustin-Birch (*see* ECF No. 304), who held a hearing on the Motion and fully considered the briefing, exhibits, arguments of counsel, and the record. *See* Report at 1.

In the Report, the Magistrate Judge recommends: (1) striking the opinions of Giles Tremlett; (2) striking the opinion of Scott Edmonds on the first topic of inquiry identified in his report; (3) not striking Peter Ford's opinions; and (4) striking Timothy Riddiough's opinions regarding the valuation of the subject property in July 2021 only. *See*, generally, Report. The parties filed Objections to the Report (ECF Nos. 389, 391, 425) which are now ripe for this Court's consideration. For the reasons that follow, the undersigned affirms and adopts in part the Magistrate Judge's recommendations.

## II. LEGAL STANDARDS

### A. Review Of Report And Recommendation.

When a magistrate judge enters a report and recommendation, and the magistrate judge's "disposition" is properly objected to, district courts must review the disposition *de novo*. Fed. R. Civ. P. 72(b)(3). "*De novo* review implies that "the district court's consideration of the factual issue ... be independent and based upon the record before the court." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (citing *LoConte v. Dugger,* 847 F.2d 745, 750 (11th Cir.1988)).

A proper objection "identifie[s] specific findings set forth in the R & R and articulate[s] a legal ground for objection." *Leatherwood v. Anna's Linens Co.*, 384 F. App'x 853, 857 (11th Cir. 2010) (citation omitted). "Frivolous, conclusive, or general objections need not be considered by the district court." *Id*. (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988) (internal quotation marks and other citation omitted)); *see also Russell*

*v. United States*, No. 11-20557-Civ, 2012 WL 10026019, at *1 (S.D. Fla. Apr. 17, 2012) (declining to address general or blanket objections not specifically identifying aspects of the Magistrate Judge's report to which the petitioner objected). To accept any portion of a Report and Recommendation to which no party objects the Court "need only satisfy itself that there is no clear error on the face of the record[.]" Fed. R. Civ. P. 72(b)(3) advisory committee's notes.

Since the parties filed timely objections, this Court has reviewed the record *de novo*.

### B. The Trial Court's Gatekeeping Function.

Trial courts serve an important gatekeeping role regarding the admissibility of expert testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993) ("[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) ("The objective ... is to ensure the reliability and relevancy of expert testimony."). Thus, the trial court must examine "the foundations of expert opinions to ensure they meet the standards for admissibility." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (emphasis omitted) (citing *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir.2002)).

Federal Rule of Evidence 702 allows a qualified expert to give opinion testimony when it is necessary to help the trier of fact understand the issues, the opinion is based on sufficient facts or data, it was produced using reliable principles and methods, and those principles and methods were reliably applied to the facts of the case. Fed. R. Evid. 702. The Eleventh Circuit employs a "rigorous" three-part inquiry to determine if these admissibility criteria are met. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998).

Expert testimony is admissible when:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Id.* Thus, the admissibility of an expert's opinion turns on three things: qualifications, reliability, and helpfulness. "The burden of establishing qualification[s], reliability, and helpfulness rests on the proponent of the expert opinion." *Frazier*, 387 F.3d at 1260; *see also Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (stating that the proponent has the burden to show reliability by a preponderance of the evidence).

1.      Qualifications.

An expert may be "qualified" in many ways. *Frazier*, 387 F.3d at 1260. Federal Rule of Evidence 702 makes clear that expertise can arise from "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The trial court must ensure that an individual's experience provides an appropriate foundation for asserting the opinions in question. *Frazier*, 387 F.3d at 1262. Determining that a witness is qualified to form an opinion, however, is a separate and distinct inquiry from whether that opinion has a reliable basis. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). In other words, a witness can be qualified yet offer unreliable testimony. *Id.* at 1342.

2.      Reliability.

The reliability inquiry focuses solely on the principles and methodology underlying the expert's opinion, *not* the expert's conclusions. *Daubert*, 509 U.S. at 595. Thus, the question is not whether the expert's opinion is correct, but whether the basis on which it rests is reliable. *Allison*, 184 F.3d at 1312. Generally, if the principles, theories, and

methodologies behind the opinion are scientifically valid and can be applied to the facts at issue in the case, then the opinion has a reliable basis. *Daubert*, 509 U.S. at 592–93.

In *Daubert*, the Supreme Court discussed four factors that the trial court might consider in its reliability inquiry: (1) whether the methodology has been (or can be) tested, (2) whether the methodology has been subject to peer review, (3) whether the methodology has a high rate of error, and (4) whether or not the methodology is widely accepted within the scientific community. *Id.* at 593–94. This list, however, is not comprehensive. *Id.* at 593 ("Many factors will bear on the inquiry, and [there is no] definitive checklist or test."). The trial court is not limited to the *Daubert* factors and may consider other questions in light of the specific facts of the case at hand. *Kumho*, 526 U.S. at 152 ("[W]hether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine.") (emphasis omitted); *see also Allison*, 184 F.3d at 1312 (noting that the factors listed in *Daubert* were not exhaustive). Trial courts have considered other factors such as whether an expert relied on "anecdotal evidence (as in case reports), temporal proximity, [or] improper extrapolations (as in animal studies)." *Allison*, 184 F.3d at 1312.

Moreover, there is an important distinction between scrutinizing the reliability of an expert opinion's underlying methodology (or principles) and scrutinizing the expert's application of that methodology. *Quiet Tech.*, 326 F.3d at 1343. Challenging the underlying methodology in general is an admissibility issue; challenging the expert's application of that methodology is an accuracy issue. *Id.* at 1344, 1344 n.11, 1345. Issues of accuracy are best resolved through cross-examination and the adversarial process. *Id.* at 1345; *see also Bazemore*

*v. Friday*, 478 U.S. 385, 400 (1986) ("Normally, failure to include variables will affect the analysis' probativeness, not its admissibility.").

> 3.      Helpfulness And/Or Relevance.

The helpfulness prong of the inquiry requires that an expert's testimony involve matters beyond the understanding of the average lay person such that it is helpful to the trier of fact. *Frazier*, 387 F.3d at 1262. The testimony must also have a "valid scientific connection to the disputed facts in the case." *Daubert*, 509 U.S. at 591. The expert may be qualified and the basis for the opinion may be reliable, but if the opinion is not necessary for resolving the issues in the case, then the opinion is not relevant and should not be admitted. *See id.* ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (citation omitted).

## III.  ANALYSIS

### A. *Giles Tremlett.*

Plaintiff proffers Giles Tremlett as an expert historian to review historical records and opine on "who owned the Angosta farm on the west side of Mariel Bay in Cuba between 1949 and 1960." *See* ECF No. 299-2 ("Tremlett Report"). Tremlett opined that the Blanco Rosell family acquired the property in 1949 and was, therefore, the owner of the property during the time at issue. *Id.* at 9.

Defendants moved to strike Tremlett's opinions on grounds he lacks qualifications, that he impermissibly opined on a mixed question of law and fact, and that his methodologies are unreliable. *See* Mot. The Magistrate Judge determined that Tremlett is qualified to offer the opinions he gave in this case and that he did not impermissibly offer opinions on mixed questions of law and fact. Report at 12-16. She, however, recommends

that this Court grant the Motion on grounds Plaintiff did not show that Tremlett's methodologies are reliable. *Id.* at 19-20.

In their Objections, Defendants argue that the Magistrate Judge erred in determining that Tremlett did not offer opinions on a mixed question of law and fact. Def. Obj. at 15.[1] Plaintiff objects that the Magistrate Judge did not apply the correct standard to the determination of whether Tremlett's methodologies are reliable because methodologies of a historian are assessed differently from other types of experts. *See* Pl. Obj. at 1-3.

The Report reflects that the Magistrate Judge engaged in a thorough analysis of how courts assess the reliability of experts' methodologies, including the assessment of historians' methodologies. The Magistrate Judge acknowledged that gathering and analyzing multiple sources to reach conclusions about historical facts is an accepted historical methodology for expert witnesses. *See United States v. Kantengwa*, 781 F.3d 545, 562 (1st Cir. 2015). When considering Tremlett's report and testimony, the Magistrate Judge raised the concern that he did not actually articulate the methodology that he used beyond collecting and reviewing historical sources. *See* Report at 17. She carefully reviewed and discussed Tremlett's testimony regarding how he analyzed and drew conclusions from his research and concluded that he provided no grounds to believe his methodologies or his processes were reliable. *Id.* at 18-21.

This Court has conducted an independent, *de novo* review of Tremlett's report and testimony, as well as the parties' arguments. As discussed above, Plaintiff bears the burden to show the reliability of its expert's methodology. Generally, if the principles, theories, and

---

[1] Throughout this Order, the Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all filings.

methodologies behind an expert's opinion are valid and can be applied to the facts at issue in the case, then the opinion has a reliable basis. *Daubert*, 509 U.S. at 592–93. Here, as the Magistrate Judge acknowledged, Tremlett does appear to have employed the standard methodology used by historians, at least in part. That is, he gathered information from multiple historic sources. But he does not explain, at all, what he did with the information gleaned from those sources to come up with his conclusions. Reviewing Tremlett's deposition testimony gives this Court no comfort that he did employ a reliable methodology, and Plaintiff is unable to save him by way of its arguments in its Objections. True, the issue of whether the expert's application of the methodology to the facts of the case is more of a jury question and can be challenged through cross examination. But the issue with Tremlett is that it is not clear what processes he engaged in between collecting information and applying the information to the facts in this case. Defendants cannot effectively cross-examine him regarding his conclusions if they do not know how he got there.

Plaintiff argues that Tremlett's testimony is being considered unfairly because he is not an experienced expert and, as such, did not articulate his methodologies in legal terms. That is not the issue. The issue is that he did not articulate his methodologies *at all* beyond explaining how he gathered information. Plaintiff conflates experience-based testimony with *ipse dixit* testimony that asks a jury simply to take the expert's word. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Trained experts commonly extrapolate from existing data."). Where an expert relies solely or primarily on experience to establish the reliability of his opinion, the expert "must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is

reliably applied to the facts." *Frazier*, 387 F.3d at 1261 (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.)). There is no dispute that Tremlett is qualified to speak on historical data, generally, but his experience may be offered to the jury as an explanation for his conclusions only if he can explain how the experience offered leads to those conclusions. Tremlett has not explained how his experience gets him to his conclusions regarding the historical data he collected, and his experience is an insufficient, unexplained basis for his opinion. Having reviewed his report and testimony, and Plaintiff's arguments regarding them, even Plaintiff is unable to shed any more light on why Tremlett's methods employed in reaching his opinions are reliable. Ultimately, Tremlett's opinions are of the very nature Rule 702 is meant to exclude – unreliable opinions that run the risk of misleading a jury. Plaintiff can present the information Tremlett collected without the imprimatur of an expert.

In sum, based on a *de novo* review, this Court agrees with the Magistrate Judge that Plaintiff has not demonstrated that the methodology used by Tremlett to reach his conclusions in this case, is reliable.[2] Therefore, the Magistrate Judge's recommendation that Tremlett's opinions should be stricken is affirmed.

### B. Scott Edmonds.

Plaintiff offers Scott Edmonds as an expert cartographer to opine on several issues related to whether certain areas, identified as areas of interest, fall within the boundaries of property purportedly owned by the Blanco Rosell family. *See* ECF No. 291-40 ("Edmonds' Report").

Defendants moved to strike Edmonds' opinions on one of the issues presented, that is,

---

[2] Defendants request that this Court also find that the Magistrate Judge erred in determining that Tremlett did not opine on a mixed question of law and fact. Given that this Court has

whether the area of interest described in his first opinion, land on which the CARILOG facility is located, falls within the boundaries of the Angosta Farm. *See* Mot. In their underlying Motion, Defendants argued that Edmonds' opinions should be stricken on grounds they are neither reliable nor helpful. *Id.* Plaintiff averred that the Eleventh Circuit had already determined that Edmonds' opinions are reliable in the *Seaboard* decision. *De Fernandez v. Seaboard Marine, Ltd.*, 135 F.4th 939 (11th Cir. 2025) (the "*Seaboard Marine* Appeal").

The Magistrate Judge concluded that the Eleventh Circuit had not considered the reliability of Edmonds' opinions and further determined that Edmonds' methodology and opinion was neither reliable nor helpful. She, therefore, recommends that the Defendants' Motion be granted as to the first area of inquiry in Edmonds' report. Report at 29.

In their Objections, Defendants argue that this Court should also find that Edmonds' opinions should be excluded because he relied on an outdated map and he used a different methodology than that which he typically uses in practice. Def. Obj. at 16. Plaintiff objects, generally, that the Magistrate Judge essentially invaded the province of the jury by basing her decision on her disagreement with Edmonds' reasons for analyzing the information he collected the way that he did. *See* Pl. Obj. at 4-7.

Initially, this Court agrees with the Magistrate Judge's analysis of the Eleventh Circuit's holdings and the issues before it in the *Seaboard Marine* Appeal. It is clear that the issue of Edmonds' qualifications and methodologies or any other factor concerning the admissibility of his testimony were not before the court, and Plaintiffs' arguments otherwise are unavailing. *See* Report.

---

determined that Tremlett's opinions should be stricken based on the reliability prong of

This Court also agrees with the Magistrate Judge's very thorough analysis of Edmonds' methodologies and opinions. As the Magistrate Judge and Defendants point out, Edmonds did apparently choose to rely on an outdated map, or at least on a map that Defendants contend does not depict an appropriate property description. *Id.* To be sure, the bases for his opinions are shaky. Nevertheless, the identification of such flaws in an otherwise reliable methodology is precisely the role of cross-examination. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003) (citing *Daubert,* 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *Maiz v. Virani*, 253 F.3d 641, 667 (11th Cir. 2001)). Thus, with respect to Defendants' challenges to Edmonds' first opinion, this Court agrees with Plaintiff that Defendants' challenges go more to the weight of the opinion than to its admissibility. *See Maiz*, 253 F.3d at 666 (11th Cir. 2001) (explaining that the court must be careful when reviewing a *Daubert* motion not to confuse the reliability of the expert's opinion with its persuasiveness because doing so would usurp the jury's ultimate responsibility of determining the weight to be given to the opinion).

Insofar as the helpfulness element, this turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 Fed.Appx. 816, 823 (11th Cir.2014) (quoting *Frazier*, 387 F.3d at 1262) (formatting omitted). "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *Id.* (quoting *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir.2005)). To be

---

*Daubert*, this Court need not reach this additional issue.

appropriate, a "fit" must exist between the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir.2004) (citing *Daubert*, 509 U.S. at 591, 113 S.Ct. 2786). "For example, there is no fit where a large analytical leap must be made between the facts and the opinion." *Id.* (citing *General Electric Co. v. Joiner*, 522 U.S. 136 (1997)).

Again, under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (internal quotation marks and citations omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir.2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (internal quotation marks and citations omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *Rink v. Cheminova*, Inc., 400 F.3d 1286, 1293 n.7 (11th Cir. 2005). To the contrary, as stated above, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F.Supp.2d 1321, 1325 (S.D.Fla.2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir.1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook*, 402

F.3d at 1103 (quoting *Frazier*, 387 F.3d at 1258).

Again, this Court agrees with the Magistrate Judge's observation that Edmonds' opinions are based on shaky facts and data, but, while close, there is enough of an alignment between the facts and his opinions that he can offer his opinions to the jury, and the Defendants can illustrate the weaknesses in his opinions through cross-examination and argument. Although Plaintiff runs the risk of losing credibility with the jury by presenting an expert open to such attacks, this Court is satisfied that Plaintiff has shown that it is more likely than not that Edmonds' methodologies are reliable and that his opinion on the first area of inquiry is sufficiently relevant to assist the jury, who can decide what weight the opinion should be given.

Therefore, this Court will permit Edmonds to testify regarding the first area of inquiry.

### C. *Peter Ford*.

Plaintiff offers Peter Ford as an expert in maritime shipping and trade to opine regarding "the extent to which CMA CGM's commercial activities in Cuba use and benefit from the subject property." [ECF No. 299-7 at 9 ("Ford's Report")]. Ford opined that CMA CGM "benefits immensely" from the use of the subject property and surrounding facilities and land. *Id*. at 13-4.

Defendants moved to strike Ford's opinions on grounds, generally, that he is not qualified to offer the opinions he has given in this case, that he impermissibly opined on a legal issue, and that his opinions are not based on information within his personal knowledge and are not helpful to a jury. The Magistrate Judge determined that Ford is qualified to offer the opinions he gave in this case, that he did not impermissibly offer

opinions on legal issues, and that the question of whether information he relied on was not within his personal knowledge is not a basis for striking him. Report at 32-6. She also concluded that his testimony would be helpful to a factfinder. *Id*. at 37.

In their Objections, Defendants argue that the Magistrate Judge erred in determining that Ford is qualified and argue that Ford should be stricken because his opinions are unreliable. Def. Obj. at 15.

Based on a *de novo* review of Ford's report and testimony, the Magistrate Judge's Report, and the parties' arguments regarding Ford's opinions and the facts and experience on which he relied in forming his opinions, the undersigned agrees with the Magistrate Judge's careful analysis of Ford's opinions and the parties' arguments. The undersigned also agrees with the Magistrate Judge's conclusion that Plaintiff has shown by a preponderance of the evidence that Ford's testimony satisfies Rule 702 and *Daubert*.

A reading of Defendants' arguments reflects that, more than anything, Defendants are attacking Ford's personal credibility. The undersigned disagrees that Ford's conclusions are speculative or unreliable, and it is not this Court's role to exclude an expert based on a belief that the expert lacks personal credibility or to make conclusions as to the persuasiveness of proffered evidence. *See Rink*, 400 F.3d at 1293, n. 7; *Quiet Tech.*, 326 F.3d at 1341. As discussed above in connection with Edmonds, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n*, 674 F.Supp.2d at 1325 (internal quotations omitted).

In sum, this Court agrees with the Magistrate Judge's recommendation that Ford's opinions should not be excluded.

### D. *Timothy Riddiough.*

Plaintiff offers Timothy Riddiough as an expert in real estate valuation to opine regarding the fair market value of property at issue (Subject Property) in August 1960 and July 2021. Riddiough opined that the Subject Property had a value of approximately $11.2 million in August 1960 and that it had a value of approximately $139.5 million in July 2021. *See* ECF 299-8. He then valued revised or different plots of the Subject Property as approximately $8.1 million in August 1960 and approximately $115 million in July 2021. *See* ECF No. 299-1.

Defendants moved to strike Riddiough's opinions. Initially, they argued that Judge Beth Bloom previously struck Riddiough. Defendants also argued that Riddiough is not qualified to offer his opinions and that his opinions are not reliable because, generally, he based them on unsupported assumptions and faulty analyses. The Magistrate Judge rejected Defendants' claim that Judge Bloom had found Riddiough to be unqualified or unreliable as an expert. *See* Report. The Magistrate Judge then determined that Riddiough is qualified to offer the opinions he gave in this case but that although his analysis regarding the August 1960 valuations are reliable, his analyses regarding the July 2021 values are not. She therefore recommends striking his opinions regarding the July 2021 valuations of the Subject Property. *Id.* at 45-53.

In their Objections, Defendants argue that the Magistrate Judge erred in not striking all of Riddiough's opinions, citing his failure to consider relevant concerns regarding the possible uses of the Subject Property when it was confiscated and the affect of those omissions on the potential values. *See* Def. Obj. at 11-12. Defendants also argue that the Magistrate Judge failed to consider problems with the comparable parcels Riddiough used

to come up with his opinions. *Id.* at 13. Plaintiff argues, generally, that the Magistrate Judge improperly substituted her own opinions for that of its expert and that Defendants have not come forward with evidence calling into question the reliability of Riddiough's analyses. *See* Pl. Obj. at 12-23.

The undersigned has conducted a *de novo* review of Riddiough's report and testimony, the Magistrate Judge's Report, and the parties' arguments regarding Riddiough's analyses and opinions. The issue of the admissibility of Riddiough's opinions is particularly fact-intensive and will largely depend on facts admitted into evidence during the trial of the case. The Magistrate Judge has undertaken a thorough and careful analysis of the evidence and Riddiough's methods of analyzing the evidence. The undersigned agrees with the Magistrate Judge's determination that Riddiough is qualified. The parties have significant disagreements regarding the facts and information relied on by Riddiough in forming his opinions and on whether he used or properly applied the best methodologies for reaching his conclusions.

Having reviewed the record, this Court finds that a final determination of whether Riddiough's opinions are admissible would be premature. There are too many issues that must be determined before a decision on whether he should be permitted to offer some or all of his opinions should be made.

Therefore, this Court takes the issue of whether Riddiough's opinions as to both the 1960 and the 2021 valuations of the Subject Property, including as revised, may be offered at trial under advisement. The issue will be addressed, informed by the Magistrate Judge's thorough analysis, during trial.

## IV. CONCLUSION

Accordingly, for the reasons set forth above, it is hereby

**ORDERED AND ADJUDGED** that:

(1) Defendants' Motion to Exclude the Opinions of Giles Tremlett, Scott Edmonds, Peter Ford, and Timothy Riddiough **[ECF Nos. 284, 300-1]** is **GRANTED IN PART** and **DENIED IN PART**.

(2) The Magistrate Judge's Report and Recommendation **[ECF No. 378]** is **AFFIRMED AND ADOPTED IN PART** as follows:

    a. The Motion is **GRANTED** as to Giles Tremlett, and his opinions are **EXCLUDED;**

    b. The Motion is **DENIED** as to Scott Edmonds, and he may testify regarding his disclosed opinions, including on the first area of inquiry;

    c. The Motion is **DENIED** as to Peter Ford, and he may testify regarding his disclosed opinions; and

    d. With respect to Timothy Riddiough, the Court **RESERVES RULING**. The admissibility of his opinions regarding the 1960 and 2021 valuations, including any revised valuations, is **TAKEN UNDER ADVISEMENT** and will be determined at trial upon a more fully developed evidentiary record.

(3) To the extent this Court indicates above the agreement with the Magistrate Judge's analyses and conclusions, they are adopted by reference and incorporated herein for purposes of appellate review.

(4) The Court will address any remaining evidentiary or procedural issues concerning expert testimony at the appropriate time prior to or during trial.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 17th day of November, 2025.

_____

**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**